THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID WALES, Defendant-Appellant.

First District (6th Division)   No. 1—03—2034

Opinion filed April 15, 2005.

Michael J. Pelletier and Heidi Linn Lambros, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Samuel Shim, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

After a jury found him guilty of first degree murder, defendant David Wales was sentenced to 40 years in prison. Defendant contends on appeal that (1) the trial court abused its discretion by not instructing the jury on Illinois Pattern Jury Instructions, Criminal, No. 7.02X (4th ed. 2000) (hereinafter IPI Criminal 4th No. 7.02X) regarding the felony-murder doctrine; and (2) the State's closing arguments denied him a fair trial. For the reasons that follow, we affirm defendant's conviction.

## BACKGROUND

On February 17, 1999, the victim, M.A., was discovered strangled to death in her apartment. In March 1999, defendant was arrested and later charged with first degree murder, aggravated criminal sexual assault, home invasion and residential burglary. Two codefendants, Ronald Hinton and Michael Sanders, were also charged with the same offenses and tried separately. Prior to defendant's trial, the State dismissed all of the counts except two felony-murder counts based on aggravated criminal sexual assault and residential burglary.

At trial, the State presented evidence that M.A. attended work on Friday, February 12, 1999, and had food delivered to her apartment about 11:15 that evening. On Wednesday, February 17, M.A.'s acquaintances contacted the police because they were concerned after she did not attend a church dinner and dance on Saturday evening, February 13, or report to work since Friday. Chicago police detective Lawrence Aikin and his partner went to M.A.'s apartment on West

Morse Avenue in Chicago and found her deceased on her bed. Dr. Aldo Fusaro of the medical examiner's office opined that M.A. died as a result of strangulation. Dr. Fusaro also said that the area near M.A.'s vagina was raw and reddened. M.A. had no defensive wounds. The DNA analysis of the vaginal swab of M.A. matched the DNA profile of codefendant Hinton but not defendant. A cigarette butt recovered from M.A.'s apartment matched the DNA profile of Hinton but not defendant.

On March 3, 1999, Detective Aikin received information that M.A.'s cash station card was used several times after her murder. Aikin determined that the card was used at six different locations on the north side of Chicago. Aikin obtained bank videotapes, which showed two men withdrawing money with M.A.'s card. Defendant was not on the videotape. Photo stills were created from the videotape, enhanced and released to the media. On March 11, 1999, Chicago police detective Paul Cardon interviewed Hinton's daughter and later located and arrested Hinton and Sanders. After Chicago police detective Edward Louis talked to Hinton, the police arrested defendant about 5 p.m. on March 12, 1999. Defendant denied any involvement in the offense.

When Detective Louis talked to defendant about 2 a.m. on March 14, defendant said he was in an alley on Morse Avenue with Hinton and Sanders on the morning of the offense. According to defendant, Hinton wanted to do a burglary and listened at doors on the second floor of an apartment building. Hinton and Sanders went into an apartment, and defendant later followed them inside. Defendant was in the kitchen and heard a woman say, "What are you doing?" and then Hinton responded, "Just calm down." Defendant told Sanders they should leave, and defendant left the apartment. He waited outside about five minutes and then left the area. This statement to Detective Louis was not recorded in any way.

About 3 a.m. on March 14, 1999, Chicago police detective Nick Rossi spoke to defendant, who gave a statement similar to his account to Detective Louis. Defendant added that he reunited with Hinton and Sanders about 8 p.m. on February 13, 1999, and the men used the victim's automatic teller machine (ATM) card. They withdrew $500, and defendant received $50 of that money. They went to a "dope house," bought drugs and went to the south side. Later, they returned to the north side and tried unsuccessfully to use the ATM card again. Defendant left to buy his girlfriend a Valentine's present and went home.

About 4:30 a.m., Detective Rossi had another conversation with

defendant, who repeated the same account. Rossi told defendant he knew defendant was lying, and defendant gave another statement. In this account, defendant stated that he, Hinton and Sanders were in the alley because they wanted to commit a burglary. Hinton and Sanders were on back porches listening to doors while defendant acted as the lookout. Hinton went inside an apartment. When defendant entered the kitchen of the apartment, he heard Hinton tell the woman to stay calm and thought they were in the bedroom. Defendant entered the living room and saw Sanders pick up a videocassette recorder (VCR). Defendant took the VCR and left the apartment through a rear door. They preplanned their exits and were supposed to leave at separate times through different doors. When they reunited 10 minutes later, Hinton and Sanders showed defendant the victim's ATM card. They used the card and obtained $500. Defendant received $50, and Hinton took most of the money to buy drugs. They went to a "dope house" and got high. Hinton gave defendant his bag of drugs, and defendant went home. About 8 p.m., defendant, Hinton and Sanders reunited, got high in the subway, and went back to the housing projects on the south side when they ran out of drugs. They continued this procedure until they could not get any more money with the victim's ATM card. They parted company, and defendant decided to use his $50 to buy a present for his wife and then went home. Detective Rossi did not record defendant's oral statements in any way.

Valerie Martinez, defendant's girlfriend, testified that defendant returned home at 3 a.m. on February 13, 1999, and slept until 1 p.m. She recalled that date because they were having guests over. According to Martinez, it was not unusual for defendant to stay out so late. Martinez never told the police or assistant State's Attorneys that defendant was at home sleeping during the offense.

After both sides rested, defense counsel referred to IPI Criminal 4th No. 7.02X and argued that the jury should be given both definition and issue instructions for the felony-murder predicate felonies of residential burglary and aggravated criminal sexual assault. The trial judge stated that the court gives issues instructions when there are corresponding verdict forms. Because there were no present charges of residential burglary or aggravated criminal sexual assault, the court was inclined to give only the definition instructions for those predicate felonies but would hear argument on the issue later. During the jury instruction conference, defense counsel argued, *inter alia*, that the trial court should give the jury issues instructions regarding the elements for residential burglary and aggravated criminal sexual assault because the jury was required to find defendant guilty of the underly-

ing felonies in order to find him guilty of felony murder. The trial court denied defense counsel's request.

The jury was then instructed, pursuant to IPI Criminal 4th No. 7.02, as follows:

> "To sustain the charge of first degree murder, the State must prove the following propositions:
>
> *First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of [M.A.]; and
>
> *Second*: That when the defendant, or one for whose conduct he is legally responsible, did so, he was committing the offense of aggravated criminal sexual assault or residential burglary.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

The jury was also instructed on the definitions of aggravated criminal sexual assault, criminal sexual assault, sexual penetration, residential burglary and dwelling place.

The jury found defendant guilty of first degree murder, and defendant received a prison sentence of 40 years. Defendant appealed.

## ANALYSIS

### 1. Felony-Murder Jury Instruction

Defendant contends he was denied a fair trial when the trial court denied his request to tender IPI Criminal 4th No. 7.02X to the jury. He argues that the IPI committee notes mandate that IPI Criminal 4th No. 7.02X be given when the sole basis for a defendant's first degree murder conviction is the felony-murder doctrine and the jury is not rendering verdicts on the underlying felony. Defendant clarifies that he does not argue on appeal that he was entitled to have the jury instructed on the elements of the predicate felonies.

■ We review the trial court's refusal to issue tendered jury instructions under an abuse of discretion standard. *People v. Williams*, 315 Ill. App. 3d 22, 31 (2000). The purpose of jury instructions is to provide the jury with correct legal principles applicable to the evidence so that the jury may reach a correct conclusion according to the law and the evidence. *People v. Novak*, 163 Ill. 2d 93, 115-16 (1994). Instructions in criminal cases must be read as a whole and are sufficient if they fully and fairly announce the law applicable to the

respective theories of the State and the defense. *People v. Terry*, 99 Ill. 2d 508, 516 (1984). Jury instructions should not be misleading or confusing. *People v. Baczkowski*, 180 Ill. App. 3d 17, 24 (1989). "In criminal cases, where Illinois Pattern Jury Instructions contain an applicable instruction giving due consideration to the facts and the governing law, the IPI instruction is to be used, unless the court determines that it does not accurately state the law." *Novak*, 163 Ill. 2d at 116, citing 177 Ill. 2d R. 451(a).

■ The trial court gave IPI Criminal 4th No. 7.02, which properly defined the issues that the State must prove, beyond a reasonable doubt, in a first degree murder case. Specifically, the jury was instructed that the State must prove (1) when defendant, or one for whose conduct he was legally responsible, performed acts that caused the victim's death, (2) he was committing the offense of aggravated criminal sexual assault or residential burglary. Furthermore, IPI Criminal 4th No. 7.02 instructed the jury that if any one of those two propositions was not proven beyond a reasonable doubt, it should find the defendant not guilty. The jury was also accurately instructed on the law of accountability and the definitions of aggravated criminal sexual assault, criminal sexual assault, sexual penetration, residential burglary and dwelling place. See *People v. Edwards*, 343 Ill. App. 3d 1168, 1178-79 (2003) (the defendant convicted of felony murder predicated on the offense of robbery was entitled to only a definition instruction on the predicate offense as opposed to an elements instruction). When considered and read as a whole, the instructions in this case fully and adequately informed the jury of the applicable law.

We find no error in the trial court's refusal to give IPI Criminal 4th No. 7.02X, which merely explains to the jury that it may not find defendant guilty of felony murder and not guilty of the underlying felony. According to the committee notes, IPI Criminal 4th No. 7.02X "should be used to avoid legally inconsistent verdicts that could arise when the jury is to be instructed on first degree murder under Instruction 7.02 and the *sole* basis for conviction is the felony murder doctrine." (Emphasis in original.) IPI Criminal 4th No. 7.02X, Committee Note. But see *People v. Jones*, 207 Ill. 2d 122, 133-34 (2003) (defendants cannot challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges). Here, legally inconsistent verdicts were not a possibility because the State had nol-prossed the aggravated criminal sexual assault and residential burglary charges. The trial court correctly determined that IPI Criminal 4th No. 7.02X was not applicable here because the jury was not rendering verdicts on the underlying felonies. See *People v. Wilson*,

348 Ill. App. 3d 360, 365 (2004) ("conviction on the underlying felony is not an element of felony murder"); *People v. Johnson*, 223 Ill. App. 3d 169, 170 (1991) (rejecting defendant's argument that his felony-murder conviction could not stand after the trial court vacated the underlying burglary conviction). Under these circumstances, giving IPI Criminal 4th No. 7.02X would have served only to confuse the jury. The clear meaning of the IPI Criminal 4th No. 7.02X committee notes is that IPI Criminal 4th No. 7.02X should be used when the jury is to be instructed on first degree murder under IPI Criminal 4th No. 7.02, the sole basis for conviction is the felony-murder doctrine, and the jury is rendering verdicts on the underlying felonies.

## 2. Closing Arguments

■ Next, defendant contends that he was denied a fair trial due to prosecutorial misconduct from improper comments in closing argument that allegedly shifted the burden of proof, misstated and distorted the evidence and the relevant law, and from comments intended to inflame the jury's passions and prejudice it against defendant.

Comments made in closing argument must be considered in context by examining the entire closing arguments of both the State and the defendant. *People v. Kliner*, 185 Ill. 2d 81, 154 (1998); *People v. Aleman*, 313 Ill. App. 3d 51, 66-67 (2000). It is well established that the State is given wide latitude in closing argument and may argue facts and reasonable inferences drawn from the evidence. *Kliner*, 185 Ill. 2d at 151; *People v. Franklin*, 135 Ill. 2d 78, 100 (1990). Further, the State may respond to comments by defense counsel that clearly invite a response. *Kliner*, 185 Ill. 2d at 154; *People v. Figgs*, 274 Ill. App. 3d 735, 752 (1995) ("a defendant may not claim as error rebuttal comments that were invited by his counsel's argument"). Because the character and scope of closing argument are left largely to the discretion of the trial court, the standard applied on review is whether the court properly exercised its discretion. See *Aleman*, 313 Ill. App. 3d at 67. A conviction will be reversed on the ground of improper argument only if the challenged comments constituted a material factor in the conviction, without which the jury might have reached a different verdict. See *Aleman*, 313 Ill. App. 3d at 67. Here, contrary to defendant's assertions, we do not believe the complained-of comments deprived defendant of a fair trial or constituted such factor that the jury would have reached a different verdict in the absence of those comments.

Even if the complained-of remarks could be said to have exceeded

the bounds of proper commentary, the remarks were not numerous and, whether viewed independently or cumulatively, do not constitute reversible error by engendering substantial prejudice against defendant and casting doubt on the reliability of the judicial process. See *People v. Blue*, 189 Ill. 2d 99, 138 (2000). We perceive no misconduct on the part of the prosecutor and do not find that the complained-of comments resulted in substantial prejudice to defendant due to the nature of the evidence against him and where the trial court instructed the jury to disregard improper comments and that arguments were not part of the evidence and should not be considered as such.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

McNULTY and TULLY, JJ., concur.