No. 2--04--0732                                     filed: 7/12/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02--CF--3064 |
| DOUGLAS MONROE, | ) ) ) | Honorable George Bridges, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

In August 2002, the defendant, Douglas Monroe, was charged with sexually assaulting his stepdaughter and his stepson. Following a jury trial, the defendant was convicted of predatory criminal sexual assault of a child (720 ILCS 5/12--14.1(a)(1) (West 2002)) and aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(i) (West 2002)). The defendant was sentenced to a total of 13 years' imprisonment. On appeal, the defendant argues that he was deprived of a fair trial: (1) based on the improper admission of hearsay testimony; (2) based on the improper admission of other-crimes evidence; and (3) because of the children's father's hostility toward him, and the defendant's inability to

fully cross-examine him. The defendant further contends that he is entitled to an additional day of credit against his sentence. We affirm as modified.

## I. Background

On September 25, 2002, the defendant was charged by indictment with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12--14.1(a)(1) (West 2002)) for allegedly committing two forms of sexual penetration (penis to vagina and penis to anus) against his stepdaughter, S.K., between January 1, 2000, and May 31, 2002. S.K. was born on November 27, 1992. The indictment further charged the defendant with aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(i) (West 2002)) for allegedly fondling the penis of his stepson, J.K., for the purposes of sexual gratification between May 1 and June 20, 2002. J.K. was born on September 28, 1991.

On January 27, 2003, pursuant to section 115--10 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115--10 (West 2002)), the trial court conducted a hearing to determine the admissibility of certain hearsay statements made by J.K. and S.K. Charles K. testified that he was the children's father and lived in Combined Locks, Wisconsin, with his wife Trina. Charles' former wife Pamela was the children's mother and their primary custodian. She lived in Beach Park with her new husband, the defendant.

Charles testified that, on June 15, 2002, the two children were visiting him. Because S.K. had recently been hit and punched by her stepbrother Christopher, Charles talked to the children about how such physical abuse was inappropriate. He also explained that mental and sexual abuse was improper. After he mentioned this, both J.K. and S.K. indicated to him that they had been sexually abused by the defendant. The children indicated that the defendant had touched them inappropriately and had also made them

touch each other in places where they should not be touched. S.K. indicated that the defendant had placed his penis on her vagina.

After Trina returned from work, Charles explained to her that there was a problem, that both children were claiming that the defendant had sexually abused them. Charles then had the children talk separately to Trina. Both children reported similar incidents of abuse to Trina as they had to him. After the children informed them of this abuse, Charles and Trina took the children to the hospital.

Trina also testified at the hearing. She testified that J.K. had told her that the defendant had put his penis between his butt cheeks and rubbed very hard, that the defendant had fondled him, and that the defendant had made him touch S.K. on her inner thigh and tickle her while they were both naked. S.K. told her that the defendant had put his penis between her butt cheeks and between her vagina. S.K. indicated that the defendant did not put his penis inside her, but he did push very hard. S.K. also indicated that the defendant would make J.K. and her take their clothes off and tickle each other on the inner thighs.

At the close of the hearing, the trial court found that, based on the totality of the circumstances, there was a sufficient showing of reliability for the statements allegedly made to Charles and Trina to be admissible.

On May 11, 2004, prior to trial, the trial court considered various motions in limine. In particular, the trial court considered the defense motion to bar evidence of uncharged conduct. The defendant argued that no evidence regarding the two children touching each other should be admitted, because the defendant was never charged with causing either child to commit acts against the other for his own sexual gratification or for their

gratification. The State responded that such evidence would be appropriate because it went to show lack of mistake, intent, and mental state in committing the crimes charged. The trial court ruled that such evidence would be admissible in order to show the defendant's intent or preparation or plan, that is, the defendant's plan to prepare the children to be sexually assaulted.

The trial court also considered the defense motion to bar any testimony that the defendant had placed his penis against J.K.'s buttocks. The trial court granted the motion. When the State subsequently nol-prossed the count of predatory sexual assault involving contact of the defendant's penis with S.K.'s anus, the trial court extended its ruling on that motion to include that conduct.

At trial, Charles and Trina testified substantially the same as they had at the section 115--10 hearing. In particular, Charles testified that the children had told him that the defendant had been abusing them. Additionally, S.K. told him that the defendant would make her and J.K. touch each other in their "privates." Trina testified that, in addition to indicating that the defendant had sexually abused him, J.K. stated that the defendant had made him and S.K. remove their clothes and tickle each other on the inner thighs. Trina further testified that S.K. had told her that the defendant had made J.K. and her take off their clothes and tickle each other on the inner thighs.

S.K testified that she was 11 years old and currently in fifth grade. S.K. testified that when she was in the second grade, the defendant had touched her on her vagina with his hand or penis. S.K. did not tell anyone about what happened during second grade because the defendant had threatened to beat her if she told. S.K. testified that the defendant had also touched her vagina with his finger when she was in the third grade. S.K. testified that

there were also times when the defendant had J.K. and S.K. take off their clothes and tickle each other near their privates.  S.K. indicated that she did not tell either Charles or Trina on June 15, 2002, that the defendant had abused her.

J.K. testified that he was 12 years old and currently in sixth grade.  J.K. testified that on one night in the spring of his fifth-grade year, when he was alone with the defendant, the defendant ordered him to remove his pants.  J.K. complied because he was afraid that the defendant would get very mad.  The defendant then touched J.K.'s private part for 15 minutes.  J.K. did not tell anyone about this incident because the defendant told him that he would beat him if he did.

J.K. further testified that there were other times when the defendant had touched his penis.  J.K. used to sleep in the defendant's room about once a month after watching scary movies.  J.K.  would sleep on a foam pad kept under the couch.  There were times when J.K. slept in the room that the defendant touched his penis.  Also, on one occasion when J.K. was in the third grade, the defendant had J.K. tickle S.K. on the upper leg, toward her private part.  The defendant did not tell S.K. to do anything else to J.K.  Nor was there any other time when he had J.K. touch S.K.  J.K. denied making any statements to Trina on June 15, 2002, that the defendant had been abusing him.  He also denied making any statements to the hospital staff after Charles and Trina took him there on June 15, 2002, to be examined.

Mary Jo Kohler testified that she is a registered nurse at St. Elizabeth Hospital in Appleton, Wisconsin, and has been certified as a "Sexual Assault Nurse Examiner."  On June 15, 2002, she was working in the emergency room when Charles brought J.K. and S.K. in to be examined.  S.K. told her that the defendant would take off all her clothes at

night and would put his penis between her legs. S.K. indicated that this happened almost every night and began when she was in the first grade. S.K. further stated that she and her brother were often asked to tickle each other on the upper legs, and she did not like that.

Kohler further testified that J.K. stated that the defendant had been sexually abusing him, with the most recent abuse occurring two weeks earlier. J.K. stated that the defendant would come to his room, saying he had something to show him, would tell J.K. to undress, then would touch J.K. with his hand. J.K. informed her of similar incidents of abuse, dating back to when he was in kindergarten.

The defendant testified on his own behalf. He denied all of the charges against him. He also denied ever having J.K. and S.K. take off all of their clothes and tickle each other.

At the close of trial, the jury found the defendant guilty of predatory criminal sexual assault of a child (720 ILCS 5/12--14.1(a)(1) (West 2002)) and aggravated criminal sexual abuse (720 ILCS 5/12--16(c)(1)(i) (West 2002)). Following the denial of his posttrial motion, the defendant was sentenced to a total of 13 years' imprisonment. Following the denial of his motion to reconsider sentence, the defendant filed a timely notice of appeal.

II. Improper Admission of Hearsay Testimony

A. Propriety of Admission of Testimony Pursuant to Section 115--10 of the Code

The defendant's first contention on appeal is that the trial court erred in admitting certain hearsay statements of the victims pursuant to section 115--10 of the Code. Specifically, the defendant argues that the trial court should not have allowed Charles to testify that S.K had complained to him on June 15, 2002, of being abused by the defendant because S.K. denied making these statements at trial. The defendant further argues that Trina should not have been allowed to testify that the children made any statements to her

on June 15 regarding the alleged abuse because both J.K. and S.K. denied making those statements at trial. The defendant contends that even though the trial court found the hearsay statements reliable at the section 115--10 hearing, such "[a] pretrial determination of reliability *** should not be ironclad or unassailable [and] the events at trial must be taken into account in determining admissibility under the provision."

Section 115--10 of the Code permits testimony as to out-of-court statements made by victims of physical or sexual offenses who are under 13 years of age. 725 ILCS 5/115--10(a)(1) (West 2002). In order for such testimony to be admissible, the trial court must find in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. 725 ILCS 5/115--10(b)(1) (West 2002). Furthermore, such a statement may be admitted into evidence only if the State either produces the child for testimony or shows the child to be unavailable. 725 ILCS 5/155--10(b)(2) (West 2002); People v. Bowen, 183 Ill. 2d 103, 119 (1998).

Here, the defendant does not dispute the propriety of the trial court's ruling at the section 115--10 hearing that the time, content, and circumstances of the victims' alleged statements to Charles and Trina provided sufficient safeguards of reliability. Instead, the defendant essentially is arguing that once the children failed to corroborate at trial the hearsay statements that were admitted through section 115--10, the trial court should have retroactively determined that the statements were not reliable and thus were inadmissible under section 115--10. We disagree.

We believe that the defendant is attempting to add requirements to section 115--10 that simply do not exist. Looking at the plain language of section 115--10, which we must (see People v. Johnson, 363 Ill. App. 3d 1060, 1073 (2005)), the statute does not provide

any basis for holding that evidence presented at trial may undermine the trial court's findings of reliability at the prior section 115--10 hearing. Rather, the trial court must make its determination based on the "hearing conducted outside the presence of the jury." 725 ILCS 5/115--10(b)(1) (West 2002). As the defendant implicitly acknowledges, this is what the trial court did. As such, the defendant's contention is without merit.

In so ruling, we find unpersuasive the defendant's reliance on People v. Kinnett, 287 Ill. App. 3d 709 (1997). In Kinnett, the trial court ruled that the victim's grandmother would not be allowed to testify to certain hearsay comments that the victim had made to her regarding being abused by the defendant. The trial court excluded that evidence because the victim herself testified at the section 115--10 hearing and denied making those allegations of abuse to her grandmother. Kinnett, 287 Ill. App. 3d at 712. Conversely, in the instant case, neither of the victims testified at the section 115--10 hearing. As such, Kinnett is inapposite to the case at bar.

### B. Propriety of Testimony in Light of Crawford v. Washington

We next address the defendant's argument that his sixth amendment right of confrontation was violated when the victims denied they made statements on June 15, 2002, to Charles and Trina that the defendant had abused them. Relying on Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the defendant argues that once the victims denied making the allegations at issue to either Charles or Trina, he was essentially unable to cross-examine the victims regarding the alleged statements. Because he was not able to cross-examine the victims on that point, the defendant contends that he was deprived of a fair trial.

In Crawford, the Supreme Court held that testimonial forms of hearsay evidence are inadmissible absent a finding of unavailability and an opportunity to cross-examine the witnesses. Crawford, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365. However, when "the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. In other words, when a child sex abuse victim appears at trial and is subject to cross-examination, any prior statement of the victim being offered pursuant to section 115--10 of the Code is a nonevent. Johnson, 363 Ill. App. 3d at 1071; People v. Sharp, 355 Ill. App. 3d 786, 796 (2005). A witness is regarded as "subject to cross-examination" when he is placed on the stand, under oath, and willingly responds to questions. United States v. Owens, 484 U.S 554, 561, 98 L. Ed. 2d 951, 959, 108 S. Ct. 838, 844 (1988); People v. Miller, 363 Ill. App. 3d 67, 74 (2005).

In Miller, the Illinois Appellate Court, First District, addressed an issue similar to the one that the defendant raises herein. In that case, Murray Harris witnessed the shooting of the victim, Ladrakegus Easley. Harris made a statement to the police that implicated the defendant as the shooter. However, at trial, Harris denied seeing the defendant shoot Easley. The State subsequently impeached Harris with the statement that he had provided to the police. On cross-examination, Harris persisted in his testimony that he had not seen the defendant shoot the victim. The defendant was subsequently convicted of attempted first-degree murder. Miller, 363 Ill. App. 3d at 69-71.

On appeal, the defendant argued that his sixth amendment right of confrontation was violated because when Harris denied making any prior identification, defense counsel

was " 'unable to effectively cross-examine him regarding these statements.' " <u>Miller</u>, 363 Ill. App. 3d at 71. The appellate court rejected the defendant's argument, finding that Harris willingly testified in court and that the defendant had the opportunity to cross-examine him. <u>Miller</u>, 363 Ill. App. 3d at 74. The appellate court explained:

"For defendant to argue that he was deprived of the opportunity to cross-examine Harris is truly an illusory proposition. This is particularly true because the cross-examination questioned the identity of the shooter, which is precisely the purpose of the cross-examination. Not only was defendant given the opportunity to cross-examine Harris, he had a successful, 'friendly' cross-examination because the testimony elicited supported and corroborated defendant's theory of the case. Even if the witness denies making the out-of-court statement of identification, so long as the witness is available at trial, under oath, and willing to testify, the witness is deemed 'subject to cross-examination.' " <u>Miller</u>, 363 Ill. App. 3d at 75.

Here, the victims testified at trial and submitted themselves to cross-examination. The victims willingly responded to defense counsel's questions and even provided "friendly" cross-examination testimony when they denied making claims of abuse to Charles and Trina. As such, the victims' testimony was similar to the testimony at issue in <u>Miller</u> that supported and corroborated the defendant's theory of the case. Accordingly, because the victims were available at trial, under oath, and willing to testify, the defendant's argument that the victims were nonetheless not "subject to cross-examination" is without merit. See <u>Miller</u>, 363 Ill. App. 3d at 74.

### C. Jury Instructions as to Hearsay Testimony

The defendant next contends that he was deprived of a fair trial because the trial court failed to give a jury instruction as to how the hearsay testimony at issue could be considered. Specifically, the defendant contends that the instruction that the trial court gave as to hearsay evidence was insufficient because it did not explicitly refer to the in-court denials of the statements the children allegedly made to Charles and Trina. The defendant argues that the children's denials of the statements at issue "were the most important part of the trial evidence to call to the jury's attention and were unquestionably a relevant factor to be taken into account."

We review the trial court's refusal to issue tendered jury instructions under an abuse of discretion standard. People v. Wales, 357 Ill. App. 3d 153, 157 (2005). The purpose of jury instructions is to provide the jury with the correct legal principles applicable to the evidence so that the jury may reach a correct conclusion according to the law and the evidence. Wales, 357 Ill. App. 3d at 157. Instructions in criminal cases must be read as a whole and are sufficient if they fully and fairly announce the law applicable to the respective theories of the State and the defense. People v. Terry, 99 Ill. 2d 508, 516 (1984). Jury instructions should not be misleading or confusing. People v. Baczkowski, 180 Ill. App. 3d 17, 24 (1989). " 'In criminal cases, where Illinois Pattern Jury Instructions contain an applicable instruction giving due consideration to the facts and the governing law, the IPI instruction is to be used, unless the court determines that it does not accurately state the law.' " Wales, 357 Ill. App. 3d at 158, quoting People v. Novak, 163 Ill. 2d 93, 116 (1994), citing 177 Ill. 2d R. 451(a).

Here, the trial court gave Illinois Pattern Jury Instructions, Criminal, No. 11.66 (4th ed. 2000) (hereinafter IPI Criminal 4th). This instruction provided:

"You have before you evidence that [S.K.] and [J.K.] made statements concerning the offenses charged in this case. It is for you to determine whether the statements were made and, if so, what weight should be given to the statements. In making that determination, you should consider the age and maturity of [S.K.] and [J.K.], the nature of the statements, and the circumstances under which the statements were made."

This IPI instruction accurately states the law and thus was properly given by the trial court. See Wales, 357 Ill. App. 3d at 158. The defendant contends that the trial court should have used the defense version of this instruction, which inserted at the end of the third sentence language to the effect: "the in-court denials by [S.K.] and [J.K.] to having made such statements." The defendant notes that such additional language would have been permissible because the committee notes to IPI Criminal 4th No. 11.66 specifically allow the trial court to insert any other relevant factor concerning the weight and credibility of the statement. IPI Criminal 4th No. 11.66, Committee Note, at 581. The State responds that the instruction the trial court gave was proper because it did not unduly highlight any particular testimony. We agree with the State.

As noted above, it is within the trial court's discretion to determine what instructions to give to the jury. See Wales, 357 Ill. App. 3d at 157. Here, the trial court informed the jurors that it was up to them to determine whether the statements at issue had in fact been made. As such, the jury was instructed on the defendant's theory of the case. See People v. Brown, 243 Ill. App. 3d 170, 173 (1993). The trial court therefore did not abuse its discretion in not giving the specific instruction that the defendant requested.

### III. Improper Admission of Evidence of Other Bad Conduct

A. Evidence of Improper Tickling

The defendant contends that the trial court erred in admitting evidence that he had the victims tickle each other on their inner thighs in front of him while they were naked. The defendant argues that such allegations had nothing to do with the charges against him. Rather, such allegations served only to inflame the passions of the jury against him. The defendant further contends that the trial court erred in allowing Charles and Trina to testify as to the incidents of tickling pursuant to section 115--10 of the Code and Nurse Kohler pursuant to section 115--13 of the Code (725 ILCS 5/115--13 (West 2002)).

Evidence of other crimes or bad conduct is generally inadmissible to demonstrate propensity, i.e., to show that the defendant is the type of person who would have committed the crime charged. People v. Donoho, 204 Ill. 2d 159, 170 (2003). This type of evidence is considered dangerous because a jury might convict the defendant for being a bad person rather than for having actually committed the crime with which he is currently charged. Donoho, 204 Ill. 2d at 170. However, if other-crimes evidence is relevant for any other purpose, such as to show a defendant's design, scheme, or plan, it is admissible. People v. Kimbrough, 138 Ill. App. 3d 481, 484-85 (1985). We will not reverse the trial court's ruling on the admissibility of such evidence absent a clear showing that the trial court abused its discretion. People v. Thingvold, 145 Ill. 2d 441, 452-53 (1991).

Here, we do not believe that the trial court abused its discretion in allowing the State to admit evidence that the defendant made the children tickle each other near the genital area while naked. The record reveals that when the children first complained to Charles and Trina about the defendant's abuse, they also described the tickling incidents. Furthermore, when the children reported the abuse to Nurse Kohler, they

contemporaneously referred to the tickling incidents as well. Such testimony indicates that the defendant's requiring the children to tickle each other went hand-in-hand with his abuse of them. As such, the evidence of improper tickling was properly admitted to reflect the defendant's design, scheme, or plan of abusing the children. See Kimbrough, 138 Ill. App. 3d at 485; People v. Kissinger, 116 Ill. App. 3d 826, 831-32 (1983).

We next address the defendant's contention that the testimony of Charles and Trina as to any tickling between the children was improper pursuant to section 115--10 of the Code. The defendant argues that because this testimony did not pertain to any act that was an element of the offenses with which he was charged, it was not properly admitted pursuant to section 115--10(a)(2).

Section 115--10(a)(2) of the Code provides that the following evidence shall be admitted as an exception to the hearsay rule:

"[T]estimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim." 725 ILCS 5/115--10(a)(2) (West 2002).

Illinois courts have interpreted this language as permitting the admission of details of the child's complaint, even if not on an element of the crime charged. See People v. Schmitt, 204 Ill. App. 3d 820, 829 (1990); People v. Rushing, 192 Ill. App. 3d 444, 450-51 (1989); People v. Morton, 188 Ill. App. 3d 95, 102 (1989).

As explained above, the trial court conducted a proper section 115--10 hearing outside the presence of the jury in order to determine that the time, content, and circumstances of the statements at issue provided sufficient safeguards of reliability. The

trial court determined that the statements at issue were in fact reliable. Charles and Trina testified that when the children indicated to them that the defendant was abusing them, the children also indicated that the defendant required them to tickle each other while naked. Charles' and Trina's testimony as to the tickling went to the details of how the defendant was abusing the children. Such testimony was therefore not improper pursuant to section 115--10. See Schmitt, 204 Ill. App. 3d at 829.

We next address the defendant's contention that Nurse Kohler's testimony regarding the tickling was improperly admitted. The defendant notes that her testimony was admitted pursuant to section 115--13 of the Code (725 ILCS 5/115--13 (West 2002)). Section 115--13 provides in pertinent part:

"[S]tatements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." 725 ILCS 5/115--13 (West 2002).

A trial court is vested with discretion in determining whether the statements made by the victim were reasonably pertinent to the victim's diagnosis or treatment. People v. Davis, 337 Ill. App. 3d 977, 989 (2003).

We find that Nurse Kohler's testimony as to the tickling was improperly admitted. Because the children never complained that this tickling caused them any physical injuries, such statements were not "reasonably pertinent to diagnosis or treatment." 725 ILCS 5/115--13 (West 2002). Nonetheless, the trial court's admission of this evidence was harmless. See Davis, 337 Ill. App. 3d at 990 (explaining that evidence improperly admitted

pursuant to section 115--13 is subject to harmless error analysis).  The hearsay testimony was cumulative of the testimony of Charles and Trina as well as of that of J.K. and S.K. See People v. Warmack, 44 Ill. App. 3d 243, 247 (1976) (if hearsay testimony is merely cumulative, it constitutes harmless error).  Furthermore, since S.K. and J.K. were subject to cross-examination, the defendant was not prejudiced by Nurse Kohler's testimony as to the tickling.  See People v. Robinson, 73 Ill. 2d 192, 200 (1978) (explaining that defendant is not prejudiced by admission of hearsay testimony where defendant is afforded opportunity to expose the source of the assertion to cross-examination).

### B. Testimony as to the Defendant Touching the Children's Buttocks

The defendant next contends that he was deprived of a fair trial when some State witnesses interjected references to other alleged sexual contact between him and the two children, even though the trial court had granted his motion in limine, barring references to such conduct.  Specifically, the defendant argues that he was deprived of a fair trial when various witnesses testified that his penis had come into contact with the buttocks of both S.K. and J.K.

As noted above, the trial court granted the defendant's motion in limine to bar any testimony to the effect that the defendant's penis had come into contact with the buttocks of either S.K. or J.K.  At trial, however, Charles, Trina, S.K., and Nurse Kohler testified to this effect.  Nevertheless, we do not believe that the defendant was prejudiced by any testimony in violation of the order in limine.  Each time a witness testified in violation of the order in limine, the trial court sustained an objection to the improper testimony, gave an instruction to the jury to disregard the improper testimony, or offered to give a jury instruction that defense counsel ultimately requested not be given.  As such, the trial court's

remedial action cured any prejudice to the defendant. See People v. Hall, 194 Ill. 2d 305, 342 (2000) (when evidence of uncharged conduct is improperly admitted at trial in violation of order in limine, any prejudice to the defendant is generally cured when the trial court sustains a timely defense objection or instructs the jury to disregard the improper testimony).

We note that Dr. Susan Szabo testified, over defense counsel's objection, that she had examined J.K.'s anal area. No specific jury instruction was given or offered to be given as to this specific testimony. The defendant argues that this testimony was improper because it created the inference that J.K. had been touched in that area. We disagree. Dr. Szabo was examining J.K. after he had reported that he had been sexually abused. As such, Dr. Szabo would be expected to do a full examination of the victim. The defendant therefore was not prejudiced by testimony that she had in fact done that.

We also reject the defendant's contention that he was deprived of a fair trial when both J.K. and Nurse Kohler testified as to abuse that occurred outside the time frame in the bill of particulars. The defendant notes that he was charged with abusing S.K. between January 1, 2000, and May 31, 2002, and J.K. between May 1, 2002, and June 20, 2002. However, the defendant argues that both J.K. and Nurse Kohler were questioned as to abuse that allegedly happened outside this time frame.

The record reveals that when J.K. was testifying, the State asked him whether he had been abused other times by the defendant. Defense counsel's objection to this question was sustained. As explained above, the trial court's action remedied any potential prejudice to the defendant. See Hall, 194 Ill. 2d at 342.

As to Nurse Kohler, the State questioned her how long J.K. indicated that he had been abused. The trial court overruled defense counsel's objection, explaining that such testimony would be admissible pursuant to section 115--13 of the Code, allowing hearsay testimony of a statement that was made for medical diagnosis or treatment. The trial court also gave a limiting instruction on this point, informing the jury that such testimony should be considered only for medical diagnosis or treatment. The defendant argues that such testimony was unnecessary for any medical diagnosis or treatment because J.K. never complained of any symptom, pain, or sensation that could have resulted from the touching of his penis. We disagree. Nurse Kohler was informed that J.K. had been the victim of sexual abuse. In order to determine the extent of J.K.'s physical injuries, if any, it would be necessary for her to determine how long the alleged abuse had been occurring. Indeed, Nurse Kohler would have been remiss in her duties had she not attempted to solicit such information from J.K. As such, the trial court did not abuse its discretion in allowing her to testify pursuant to section 115--13 of the Code as to how long J.K. indicated he had been abused.

### IV. Deprivation of Fair Trial Due to Charles' Testimony

### A. Hostility of Charles Toward the Defendant

The defendant next contends that he was deprived of a fair trial due the blatant hostility Charles demonstrated toward him during the trial. Based on Charles' repeated hostile comments toward him at trial, the defendant argues that the trial court should have entered a mistrial. The defendant acknowledges that his counsel never requested a mistrial based on any of Charles' hostile comments toward him. However, the defendant

contends that the trial court should have intervened and ordered a mistrial in order to maintain the integrity of the proceedings.

In response, the State argues that the defendant was not prejudiced by any of Charles' hostile comments. Specifically, the State responds that (1) Charles' statements were natural under the circumstances; (2) the trial court sustained objections to Charles' improper comments; and (3) Charles' comments supported the defendant's theory that Charles was biased against the defendant and motivated the children to lie and say that the defendant had abused them.

We agree with the defendant that even though his counsel did not request a mistrial, the trial court had the discretion to grant one. See People v. Williams, 201 Ill. App. 3d 207, 221 (1990) (explaining that the trial court has the responsibility to see that the proceedings are conducted in an orderly manner with proper decorum, and the control of the conduct of the trial rests within its discretion). We also agree with the State, however, that the trial court did not abuse its discretion in not granting a mistrial based on the facts herein. See People v. Sambo, 197 Ill. App. 3d 574, 584 (1990) (determining that the decision whether to order a mistrial is within the trial court's discretion). As the State accentuates, the defendant's theory at trial was that Charles was biased against the defendant, the man who had married his former wife and who was now his children's stepfather. This alleged bias was well supported by the hostility that Charles demonstrated toward the defendant throughout the trial. A certain amount of hostility was also to be expected based on the nature of the charges against the defendant, that he had sexually abused Charles' children. Furthermore, the record reveals that the trial court did sustain timely objections to all of Charles' hostile comments, thereby remedying the improper testimony. See Hall, 194 Ill. 2d

at 342.  For all these reasons, we find that the trial court did not abuse its discretion in refusing to enter a mistrial based on Charles' hostile comments.

      B. Inability to Fully Cross-Examine Charles as to His Bias Against the Defendant

      The defendant contends that the trial court also erred in not allowing him to fully cross-examine Charles so as to impeach him and demonstrate his bias against the defendant.  Specifically, the defendant argues that the trial court erred in not allowing him to impeach Charles' testimony that he was surprised to learn that the defendant was abusing the children.

      During cross-examination, defense counsel questioned Charles about his claim to have been shocked at his children's allegations of sexual abuse by the defendant.  When asked if it had occurred to him before June 15, 2002, that the defendant might be abusing his children, Charles answered, "Actually it did occur to me before."  However, he then twice denied that he had ever asked the children whether the defendant was sexually abusing them.

      At that point, defense counsel sought to impeach Charles by asking him about a statement he had made during a court proceeding in Wisconsin in July 2002, when he was seeking temporary custody of the children.  The State objected to the foundation for impeachment, on the grounds that Charles had not made a sworn statement during the Wisconsin proceeding.  Defense counsel responded that impeachment is not limited to sworn statements and said that he had a transcript of the Wisconsin proceeding.  The trial court questioned how defense counsel would perfect the impeachment.  Defense counsel replied that he would call the court reporter if necessary, though he acknowledged that he had not subpoenaed the reporter.  Defense counsel also stated that both Pamela Monroe

and Trina could potentially corroborate the statement Charles had made at the Wisconsin hearing, but that he had not specifically questioned them previously about that hearing. The trial court then sustained the State's objection to defense counsel's attempt to impeach Charles based on his statement at the Wisconsin hearing.

Defense counsel did not make an offer of proof at trial as to Charles' statement that he wanted to use from the Wisconsin hearing. However, defense counsel did raise this issue again in his motion for a new trial. In his motion, defense counsel indicated that Charles' statement at issue was: "There are a bunch of other things that--that have happened in these four years that all point to this, and we have questioned most of those to no avail until my kids finally came clean and honest." The defendant argues that this statement contradicted Charles' testimony at trial in which he denied that he had ever asked the children whether the defendant was sexually abusing them. The trial court denied the defendant's request for relief on this basis in his motion for a new trial.

The defendant's right to confront witnesses against him, including cross-examination for the purpose of showing any interest, bias, prejudice, or motive to testify falsely, is guaranteed by both the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8. The exposure of hostile motivation of a witness in testifying is a proper and important function of the constitutionally protected right of cross-examination. Davis v. Alaska, 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110 (1974). Such cross-examination may concern any matter that goes to explain, modify, discredit, or destroy the testimony of the witness. People v. Averhart, 311 Ill. App. 3d 492, 497 (1999). The jury is entitled to the details of the theory of defense so it can make an informed judgment, and thus the right to cross-examine is satisfied when counsel is permitted to

"expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Davis, 415 U.S. at 318, 39 L. Ed. 2d at 355, 94 S. Ct. at 1111.

The discretionary authority of the trial court to restrict the scope of cross-examination comes into play after the court has permitted as a matter of right sufficient cross-examination to satisfy the confrontation clause. People v. Rufus, 104 Ill. App. 3d 467, 473 (1982). Limitation of a defendant's cross-examination of the bias or motive of a witness may violate a defendant's constitutional right to confront the witnesses against him. People v. Prevo, 302 Ill. App. 3d 1038, 1050 (1999). The test is whether the limitation on cross-examination created a substantial danger of prejudice by denying the defendant his right to test the truth of the testimony. People v. Harris, 123 Ill. 2d 113, 145 (1988). To determine the constitutional sufficiency of cross-examination, a court looks not to what a defendant has been prohibited from doing, but to what he has been allowed to do. People v. Maldonado, 193 Ill. App. 3d 1062, 1069 (1989). If the entire record shows that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because the defendant has been prohibited on cross-examination from pursuing other areas of inquiry. Averhart, 311 Ill. App. 3d at 497.

Here, the trial court erred in not allowing the defendant to impeach Charles as to the inconsistencies in his statements at the July 2002 Wisconsin hearing and at trial. Such cross-examination would have allowed the defendant to establish Charles' bias against the defendant. See Averhart, 311 Ill. App. 3d at 497. Nonetheless, we believe that the trial court's error on this ruling was harmless. See People v. Adams, 283 Ill. App. 3d 520, 526

(1996) (explaining that incomplete impeachment of witness is subject to harmless error analysis). Reviewing the entire record, it is apparent that the jury was made aware that Charles was biased against the defendant. Indeed, as discussed above, Charles made numerous hostile comments toward the defendant during the trial. Furthermore, based on Charles' relationship to the defendant, that being that the defendant was accused of abusing Charles' children, the jury could readily surmise that Charles harbored ill-will toward the defendant. As such, the defendant was not prejudiced by the trial court's failure to allow him to further cross-examine Charles as to the testimony at issue.

## V. Sentencing Credit

The defendant's final contention on appeal is that he is entitled to an additional day of credit against his sentence. The defendant argues that his custody date was May 11, 2004; however, he is receiving credit for being in custody only since May 12, 2004. See 730 ILCS 5/5--8--7(b) (West 2004). The State confesses error.

As the defendant requests, we take judicial notice of the official public records of the Department of Corrections. See People v. Williams, 328 Ill. App. 3d 879, 887 (2002). These records indicate that the defendant's sentence is being calculated from a custody date of May 12, 2004. However, as the State acknowledges, the defendant's sentence should be calculated from May 11, 2004. Accordingly, the mittimus is corrected to reflect that the defendant is entitled to an additional day of credit against his sentence.

## VI. Conclusion

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

BYRNE and KAPALA, JJ., concur.