NOTICE

Decision filed 04/16/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0486

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Madison County. |
| | ) |
| v. | ) No. 03-CF-3441 |
| | ) |
| RICHARD ALSUP, | ) Honorable |
| | ) Ann Callis, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE WEXSTTEN[1] delivered the opinion of the court:

On January 28, 2005, a Madison County jury convicted the defendant, Richard Alsup, of knowing first-degree murder (720 ILCS 5/9-1(a)(2) (West 2002)), aggravated possession of stolen firearms (720 ILCS 5/16-16.1(a)(1) (West 2002)), unlawful possession of weapons by a felon (720 ILCS 5/24-1.1(a) (West 2002)), and aggravated possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2002)). On appeal, the defendant argues that the State failed to prove beyond a reasonable doubt that he committed first-degree murder and that erroneously admitted hearsay evidence denied him a fair trial. For the reasons that follow, we affirm.

BACKGROUND

On the morning of Tuesday, December 2, 2003, the defendant stole a 1995 GMC conversion van from an automobile dealership in Florissant, Missouri, and led police on a high-speed chase that began in Florissant at approximately 5:15 a.m., spanned an estimated

_____

[1]Justice Wexstten was added to the panel after oral argument; he has read the briefs and listened to the audiotape of oral argument.

1

28 miles, and ended tragically in Granite City, Illinois, at 5:36 a.m. During the course of the pursuit, the defendant disregarded no less than 12 traffic control devices, continuously ignored the lights and sirens of marked police cars, and deliberately forced oncoming vehicles off the road. The defendant drove through residential areas where the posted speed limit was 25 miles per hour at speeds in excess of 50 miles per hour. On Interstate 270, the defendant reached speeds exceeding 100 miles per hour and, at one point, "swerved over and tried to ram" a St. Louis County patrol car that had joined the chase. To circumvent stopped traffic, the defendant drove on shoulders and over medians and briefly traveled northbound in the southbound lanes of Illinois Route 111. Near the intersection of Illinois Route 157 and Interstate 270, the defendant "swerved rashly" to avoid "stop sticks" (*i.e.*, portable spiked devices designed to deflate tires) that Glen Carbon police officers had placed in the road. On Illinois Route 203, the defendant nearly lost control of the van when maneuvering around stop sticks that a Madison County sheriff's deputy had placed in the road. At the intersection of Nameoki Road and Pontoon Beach Road in Granite City, the defendant drove through a red light at no less than 64 miles per hour and broadsided a 1996 Chevrolet Camaro driven by John C. Smith, one of several early morning commuters in the area at the time. The posted speed limit on both roads was 35 miles per hour, and Smith was traveling an estimated 21 miles per hour when he was hit. Smith was ejected from the Camaro as a result of the collision and died at the scene from blunt-trauma injuries to his head, face, chest, and abdomen. Two rifles that had been stolen in St. Louis the previous week were found inside the stolen van.

When later interviewed at the Granite City police department, the defendant explained that he did not stop when the pursuit became dangerous because he was on parole and did not want to go back to prison. The defendant further indicated that during the chase, he was not concerned whether he might hurt himself or someone else because all he was thinking

2

about was "getting away." The defendant acknowledged that he was responsible for the wreck because he "could have stopped at any time." Toxicology tests revealed that the defendant had not been driving under the influence of alcohol or drugs.

At the trial, the defendant presented no evidence on his behalf, and defense counsel did not argue that the defendant was not guilty of aggravated possession of stolen firearms, unlawful possession of weapons by a felon, or aggravated possession of a stolen motor vehicle. Defense counsel urged the jury to find the defendant guilty of reckless homicide rather than first-degree murder, however, emphasizing that the defendant did not intentionally cause Smith's death. The State countered that the defendant knew that his acts created a strong probability of death or great bodily harm and was thus guilty of first-degree murder. The State argued that it would be inappropriate to find the defendant guilty of the lesser offense of reckless homicide given the totality of the defendant's conduct.

The jury was instructed that to prove the defendant guilty of first-degree murder, the State had to prove that the defendant "performed the acts which caused the death of John C. Smith" and that, when doing so, the defendant "knew that his acts created a strong probability of death or great bodily harm." The jury was also instructed on the uncharged offense of reckless homicide. The jury found the defendant guilty on all counts.

ANALYSIS

Contending that the State failed to prove him guilty of first-degree murder but conceding that the evidence adduced at the trial was sufficient to establish that he committed the lesser-included offense of reckless homicide, the defendant initially asks that we reduce his conviction of murder to reckless homicide.

When reviewing the sufficiency of the evidence supporting a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a

3

reasonable doubt." *People v. White*, 221 Ill. 2d 1, 8 (2006). It is not the appellate court's function to retry the defendant, and we will not substitute our judgment for that of the trier of fact. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). A reviewing court will only reverse a conviction if the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. *Collins*, 214 Ill. 2d at 217. In its discretion, a reviewing court "may reduce the degree of an offense to a lesser[-]included offense when the evidence fails to prove the defendant guilty beyond a reasonable doubt of the greater offense." *People v. Thomas*, 266 Ill. App. 3d 914, 926 (1994).

A defendant commits the offense of knowing first-degree murder when in performing the acts that cause the death of an individual, "he knows that such acts create a strong probability of death or great bodily harm." 720 ILCS 5/9-1(a)(2) (West 2002); see also Illinois Pattern Jury Instructions, Criminal, No. 7.01 (4th ed. 2000). "A person *** acts knowingly or with knowledge of *** [t]he nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist." 720 ILCS 5/4-5(a) (West 2002). "A person *** acts knowingly or with knowledge of *** [t]he result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2002).

A defendant commits the offense of reckless homicide when he unintentionally causes the death of an individual by operation of a vehicle and "his acts *** which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." 720 ILCS 5/9-3(a) (West 2002); see also Illinois Pattern Jury Instructions, Criminal, No. 7.09 (4th ed. 2000). "A person is reckless or acts recklessly[] when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard

4

constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2002).

Apart from the fact that reckless homicide necessarily involves the operation of a vehicle, the basic difference between reckless homicide and knowing first-degree murder is the mental state that accompanies the conduct resulting in the victim's death. See *People v. DiVincenzo*, 183 Ill. 2d 239, 249 (1998). While the difference between the two offenses is not always easy to discern (*People v. Melind*, 179 Ill. App. 3d 836, 843 (1989)), the distinction "rests in the degree to which the acts [that the] defendant performed risk death or great bodily harm" (*People v. Mifflin*, 120 Ill. App. 3d 1072, 1077 (1984)). "Whether the particular acts of the defendant create a 'strong probability' of death or great bodily harm or whether they are 'likely' to cause death or great bodily harm is a question of fact to be decided under all the circumstances as presented to the trier of fact." *Mifflin*, 120 Ill. App. 3d at 1077; see also *People v. Jennings*, 268 Ill. App. 3d 439, 446 (1994) ("whether the defendant is guilty of murder [under section 9-1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 9-1(a)(2))] because his acts created a strong probability of death or great bodily harm, or whether he is instead guilty of [reckless homicide] because his acts were merely reckless, is a question of fact for the trier of fact").

In *People v. Thomas*, 266 Ill. App. 3d 914 (1994), while driving a stolen car containing stolen property, the defendant led police on a high-speed chase through heavy traffic, ignoring the sirens and emergency lights of pursuing officers. *Thomas*, 266 Ill. App. 3d at 916-17. At one point during the chase, the defendant drove into oncoming traffic and almost struck another vehicle. *Thomas*, 266 Ill. App. 3d at 917. Beyond a hill that obstructed the view of an approaching intersection, the chase ended when the defendant sped through a red light and collided with a car that was traveling in the cross-traffic through a green light; the two people in the car that had the right-of-way died as a result of injuries sustained in the

5

collision. *Thomas*, 266 Ill. App. 3d at 917. A jury found the defendant guilty on two counts of knowing first-degree murder, and on appeal, the defendant argued that "the evidence did not support convictions for first[-]degree murder[] but only supported convictions for reckless homicide." *Thomas*, 266 Ill. App. 3d at 917, 925. Affirming the defendant's convictions, the reviewing court disagreed and held that the evidence supported the jury's finding that the defendant "knew his acts created a strong probability of death or great bodily harm." *Thomas*, 266 Ill. App. 3d at 926.

In *People v. Stevens*, 324 Ill. App. 3d 1084 (2001), the defendant led police on a high-speed chase that ended when he struck another vehicle and killed its driver. *Stevens*, 324 Ill. App. 3d at 1085, 1093. The reported details of the incident are as follows:

"[The] defendant drove a stolen car at speeds in excess of 100 miles an hour, drove it on the shoulder of an expressway, weaved through traffic, refused to stop for marked police units, and drove it into the rear of the victim's vehicle. This caused the victim's vehicle to crash into a retaining wall and flip over five times. The defendant committed these acts while his passenger begged him to stop the car. The defendant refused, saying he was never going back to jail." *Stevens*, 324 Ill. App. 3d at 1093.

The defendant pled guilty to knowing first-degree murder but later moved to withdraw his guilty plea. *Stevens*, 324 Ill. App. 3d at 1085-86, 1092. When affirming the trial court's denial of the defendant's motion to withdraw guilty plea, the appellate court, relying on *Thomas*, found that the record supported the finding that the defendant knew that his actions created a strong probability of death or great bodily harm. *Stevens*, 324 Ill. App. 3d at 1093.

Here, the defendant's conduct is of the same character as that exhibited in *Thomas* and *Stevens*. The defendant, a paroled felon, was driving a stolen van containing stolen firearms when he drew the attention of law enforcement on the morning of December 2, 2003. With no intention of stopping and in total disregard for the rules of road, the defendant led police

6

on a high-speed chase during which he committed numerous perilous acts. These acts included swerving over and attempting to ram a pursuing police car and, apparently attempting to leave accidents in his wake, deliberately forcing oncoming vehicles off the road. The chase went on for 28 miles, and only when the defendant sped through a red light and struck another vehicle did it end. Unfortunately, the defendant's conduct resulted in the death of an unwary motorist. Although the defendant contends that his actions should be viewed as mere reckless driving (see *People v. Sienkiewicz*, 208 Ill. 2d 1, 11 (2003) (noting that the only difference between reckless homicide and reckless driving is that reckless homicide requires that a death result from the defendant's conduct while reckless driving does not)), the jury could rationally have concluded that the defendant's conduct amounted to more than just a series of reckless acts and that the defendant was consciously aware but simply did not care that his conduct created a strong probability of death or great bodily harm.

On appeal, the defendant suggests that *Thomas* and *Stevens* were wrongly decided and that we should reduce his murder conviction to reckless homicide in light of *People v. Belk*, 203 Ill. 2d 187 (2003). Upon examination, however, *Belk* can be construed as tacitly approving the holdings in *Thomas* and *Stevens* and is readily distinguishable from the present case in that it addressed convictions for felony first-degree murder, not knowing first-degree murder.

In *Belk*, the defendant stole a van and led police on a high-speed pursuit that ended when he crashed into the rear of another vehicle, whose two occupants died as a result of injuries sustained in the crash. *Belk*, 203 Ill. 2d at 189-90. A toxicology test revealed that the defendant's blood-alcohol level was 0.19. *Belk*, 203 Ill. 2d at 190. The defendant was later convicted of two counts of felony murder (720 ILCS 5/9-1(a)(3) (West 1996)) predicated on aggravated possession of a stolen motor vehicle. *Belk*, 203 Ill. 2d at 191. On

7

appeal, the defendant argued that his murder convictions should be reduced to reckless homicide convictions because felony murder requires proof of a forcible felony and aggravated possession of a stolen motor vehicle is not a forcible felony; the appellate court agreed and reduced the convictions. *Belk*, 203 Ill. 2d at 191. The State then appealed to the supreme court, arguing that the appellate court had erred in holding that the defendant's conduct did not fall under the purview of the felony-murder rule. *Belk*, 203 Ill. 2d at 189, 191. After discussing, *inter alia*, the statutory definition of forcible felony (720 ILCS 5/2-8 (West 1996)) and *People v. Golson*, 32 Ill. 2d 398 (1965)–wherein it was held that for a nonviolent felony to serve as the predicate offense for felony murder, the evidence must demonstrate that the offender contemplated that the use of force or violence against another might be necessary–the supreme court framed the issue before it as "whether, under the particular facts of this case, there is any evidence which would give rise to an inference that at some point during his attempt to elude the police, [the defendant] contemplated that escape might involve the use of force or violence against an individual." *Belk*, 203 Ill. 2d at 193-95. Concluding that the record contained no such evidence and thereby affirming the appellate court's reduction of the defendant's murder convictions, the court stated the following:

"The evidence shows that [the defendant] was intoxicated, that he stole a van, and that in an attempt to elude capture, he drove at an excessive rate of speed through an area where he was likely to encounter other vehicular or pedestrian traffic. While this evidence would support an inference that [he] acted recklessly and contemplated that in attempting to elude police he was likely to cause death or great bodily harm, an inference that clearly supports a conviction for reckless homicide pursuant to section 9-3 of the [Criminal Code of 1961] (720 ILCS 5/9-3 (West 1996)), it does not support an inference that [he] contemplated that the use of force or violence against an individual might be *necessary* in order for him to accomplish his escape." (Emphasis

8

in original.) *Belk*, 203 Ill. 2d at 195.

The court then addressed the State's argument that in light of *Thomas* and *Stevens*, the defendant's conduct should be considered a forcible felony under the circumstances. *Belk*, 203 Ill. 2d at 196-97. Finding that the State's reliance on *Thomas* and *Stevens* was misplaced, the court stated the following:

"In those cases, the defendants were fleeing police in stolen motor vehicles when they were involved in accidents which resulted in the victims' deaths. The defendants were convicted of first[-]degree murder pursuant to section 9-1(a)(2) of the [Criminal Code of 1961], which provides that a person commits first[-]degree murder when he knows that his actions created a strong probability of death or great bodily harm. 720 ILCS 5/9-1(a)(2) (West 2000). The appellate court upheld the convictions in those cases, finding that a jury could have concluded from the evidence that the defendants knew that their actions created a strong probability of death or great bodily harm. These cases are inapposite. While a defendant's knowledge that his actions create a strong probability of death or great bodily harm is sufficient to support a conviction for first[-]degree murder under section 9-1(a)(2) of the [Criminal Code of 1961], a defendant's knowledge that his actions *might* involve the threat or use of force or violence against an individual is not sufficient, under *Golson*, to make a felony a forcible felony under section 2-8." (Emphasis in original.) *Belk*, 203 Ill. 2d at 196-97.

Here, *Belk* is inapposite because the defendant was convicted of knowing first-degree murder rather than felony murder. Moreover, we cannot conclude that *Thomas* and *Stevens* were wrongly decided.

On appeal, referencing section 4-5(b) of the Criminal Code of 1961 (720 ILCS 5/4-5(b) (West 2002)), the defendant also argues that he was not proven guilty of knowing

murder because he "was not consciously aware that his conduct was 'practically certain' to result in death." The State was not required to prove that the defendant was consciously aware that his conduct was practically certain to result in death, however, so long as it proved that the defendant was consciously aware that his conduct created a strong probability of death or great bodily harm. See *People v. Guest*, 115 Ill. 2d 72, 96 (1986); *People v. Jerome*, 206 Ill. App. 3d 428, 435 (1990); 720 ILCS 5/4-5(a), 9-1(a)(2) (West 2002).

To sustain a conviction for knowing first-degree murder, the State is not required to prove that the defendant had the specific intent to kill or do great bodily harm or that he knew with certainty that someone would die as a result of his acts. *People v. Howery*, 178 Ill. 2d 1, 42 (1997). "A person who knows, *i.e.*, is consciously aware, that his acts create a strong probability of death to another may not have such death as his conscious objective or purpose. [Citation.] He may simply not care whether the victim lives or dies. Under these circumstances, the person would be guilty of murder although the death was caused 'unintentionally.' " *People v. Deacon*, 130 Ill. App. 3d 280, 287-88 (1985). "To sustain a murder conviction under section 9-1(a)(2), there must be evidence from which the trier of fact could infer that the defendant knew, *at minimum*, that his acts created a strong probability of great bodily harm to another individual; that the defendant acted; and that the act resulted in the death of another." (Emphasis in original.) *People v. Mifflin*, 120 Ill. App. 3d 1072, 1077 (1984).

Here, having been properly instructed on both offenses, the jury was asked to decide whether the defendant's conduct constituted knowing first-degree murder or reckless homicide. Viewing the evidence adduced at the trial in the light most favorable to the State, we cannot say that a rational trier of fact could not have found the defendant guilty of the former. Accordingly, we will not reduce the defendant's murder conviction to reckless homicide.

10

The defendant next argues that the trial court's erroneous admission of hearsay evidence denied him a fair trial. We disagree.

On Interstate 270, at 5:21 a.m., when the Florissant police in pursuit of the defendant realized that he was headed over the Mississippi River into Illinois, the officers switched their police radios from the local Florissant channel to the Illinois State Police Emergency Radio Network (ISPERN), a mutual aid channel that enables law enforcement agencies from different jurisdictions to give and receive information via a single frequency. One officer explained that ISPERN is generally used in situations "where you need to inform a lot of people at a time," such as during a pursuit or natural disaster. In response to the ISPERN alert initiated by the Florissant police, a Madison County deputy sheriff attempted to end the chase on Illinois Route 203 by placing stop sticks in the defendant's path. Near the intersection of Illinois Route 157 and Interstate 270, Glen Carbon police officers also tried to stop the defendant by placing stop sticks in the road.

At the defendant's trial, ISPERN dispatcher Travis House testified that he and fellow dispatcher Ann Dinges were on duty when the Florissant police initiated the ISPERN communications on the morning of December 2, 2003. House explained that he operated the ISPERN radio and that he and Dinges both entered information received from the various officers into a real-time log. House stated that all ISPERN communications are recorded, logged, and kept by the Illinois State Police in the regular course of business. House identified People's Exhibit 71 as a copy of the recording of the December 2 ISPERN broadcast and People's Exhibit 72 as a printout of the log of the information received. House testified that he had listened to People's Exhibit 71 and had reviewed People's Exhibit 72 and that both exhibits were accurate depictions of the December 2 ISPERN communications. Over defense counsel's hearsay objections, People's Exhibits 71 and 72 were admitted into evidence, and People's Exhibit 71 was played for the jury.

11

On appeal, the defendant argues that the contents of People's Exhibits 71 and 72 constitute inadmissible hearsay and that the trial court erred in admitting the exhibits into evidence. The defendant also asserts that the evidence was introduced for the sole purpose of producing an emotional impact by making the jurors feel like they were a part of the chase. The State suggests, as it did in the trial court, that the exhibits were relevant to establishing a time line of events, that the exhibits were properly admitted as business records under section 115-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-5 (West 2002)), and that the contents of the exhibits were further admissible as excited utterances or present-sense impressions.

The admission of evidence is within the sound discretion of the trial court, and its ruling will be declared erroneous only where there is "a clear showing of abuse of that discretion." *People v. Ward*, 101 Ill. 2d 443, 455-56 (1984). "An abuse of discretion will be found only where the circuit court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the circuit court's view." *People v. Ursery*, 364 Ill. App. 3d 680, 686 (2006).

"Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted[] and is generally inadmissible unless it falls within a recognized exception." *People v. Cloutier*, 178 Ill. 2d 141, 154 (1997). Recognized exceptions include business records (see *People v. Smith*, 141 Ill. 2d 40, 68 (1990)), statements constituting present-sense impressions (see *People v. Stack*, 311 Ill. App. 3d 162, 175-76 (1999)), and statements constituting excited utterances or spontaneous declarations (*People v. Smith*, 152 Ill. 2d 229, 258 (1992)).

The business records exception to the rule against hearsay recognizes that when made as a matter of routine in the regular course of business, records or reports of events or occurrences are generally trustworthy. *Smith*, 141 Ill. 2d at 70. In criminal cases, the business records exception to the rule against hearsay is codified in section 115-5 of the Code

12

of Criminal Procedure of 1963 (725 ILCS 5/115-5 (West 2002) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 115-5)). *Smith*, 141 Ill. 2d at 68. In relevant part, section 115-5 provides:

"(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

The term 'business,' as used in this Section, includes business, profession, occupation, and calling of every kind.

\*\*\*

(c) No writing or record made in the regular course of any business shall become admissible as evidence by the application of this Section if:

\*\*\*

(2) Such writing or record has been made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind \*\*\*." 725 ILCS 5/115-5 (West 2002).

In *People v. Smith*, 141 Ill. 2d 40 (1990), the supreme court held that prison incident reports are not admissible under section 115-5 when offered to prove the details of events such as confrontations between inmates and prison employees. *Smith*, 141 Ill. 2d at 74. The court reasoned that even when timely prepared in the ordinary course of business, those reports "generally lack the earmarks of trustworthiness and reliability which are the true basis

13

for the business records exception to the rule against hearsay and which business records are assumed to ordinarily have." *Smith*, 141 Ill. 2d at 69, 73. Likening prison incident reports to police reports founded on observations made at the scene of a crime, the *Smith* court noted that "writings or records relating to a police investigation are generally excluded from the business records exception to the rule against hearsay" because "[t]he information contained in such reports or records may well call into question the motivation, the recall, or the soundness of conclusions of the author of the report or the person providing the information contained in the report." *Smith*, 141 Ill. 2d at 72, 73; see also *Camco, Inc. v. Lowery*, 362 Ill. App. 3d 421, 434 (2005) (noting that police reports are generally inadmissible because they state conclusions or contain inadmissible hearsay). The *Smith* court expressed concerns over the reliability of "business records," which by their very nature are akin to those made "during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind" (Ill. Rev. Stat. 1985, ch. 38, par. 115-5(c)(2)), *i.e.*, reports "made with an eye toward some form of subsequent discipline" or made under circumstances suggesting "a fairly positive counter motive to misrepresent." *Smith*, 141 Ill. 2d at 72, 73.

Here, the records in question are unlike the reports described in *Smith*. The evidence before the trial court was that ISPERN is employed in situations "where you need to inform a lot of people at a time," such as during a pursuit or natural disaster, and that all ISPERN communications are recorded, logged, and retained in the regular course of business. The ISPERN communications in the present case were made in real time while an emergency situation was unfolding rather than during an investigation, and since the communications were used to, *inter alia*, coordinate and advise of the placement of stop sticks along the path of the pursuit, all parties involved had every motive to provide reliable and accurate information. The records were not "made with an eye toward some form of subsequent

14

discipline" or under circumstances suggesting "a fairly positive counter motive to misrepresent," and thus, the records do not "lack the earmarks of trustworthiness and reliability which are the true basis for the business records exception." *Smith*, 141 Ill. 2d at 73. The trial court did not abuse its discretion by ruling that the exhibits fell within the business records exception to the hearsay rule, and the fact that neither House nor Dinges personally observed the events that were recorded went to the weight of the exhibits but did not render them inadmissible. 725 ILCS 5/115-5(a) (West 2002); see also *Van Steemburg v. General Aviation, Inc.*, 243 Ill. App. 3d 299, 331-32 (1993). Even assuming, however, that the trial court did err in admitting the exhibits pursuant to section 115-5, the exhibits were also admissible as records recording present-sense impressions or spontaneous declarations.

"According to the Federal Rules of Evidence (see Fed. R. Evid. 803(1)), a present[-]sense impression is a 'statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.' The present[-]sense impression exception has three requirements: (1) that the statement describe or explain the event perceived; (2) that the declarant must have in fact perceived the event described; and (3) that the statement must be substantially contemporaneous with the event in question." *People v. Stack*, 311 Ill. App. 3d 162, 175-76 (1999). Present-sense impressions are considered trustworthy because they are safe from defects in the declarant's memory and because there is little or no time for the declarant to calculate a misstatement. *Estate of Parks v. O'Young*, 289 Ill. App. 3d 976, 983 (1997).

"To secure admission of a 'spontaneous declaration' or 'excited utterance,' the proponent of the evidence must demonstrate: (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence." *Smith*, 152 Ill. 2d at 258. " 'A spontaneous [declaration] may be defined as a statement or

15

exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him.' " *People v. Damen*, 28 Ill. 2d 464, 471 (1963) (quoting *Keefe v. State*, 50 Ariz. 293, 297, 72 P.2d 425, 427 (1937)). A spontaneous declaration has special reliability because of the lack of time to reflect or fabricate (*People v. Grover*, 116 Ill. App. 3d 116, 121 (1983)) and "may be characterized as an event speaking through the declarant and not the [declarant] speaking about the event" (*People v. Johnson*, 271 Ill. App. 3d 962, 964 (1995)).

If the contents of a document are admissible pursuant to an exception to the hearsay rule, the proponent must nevertheless lay an adequate foundation for the document's admission into evidence. *People v. Graney*, 234 Ill. App. 3d 497, 506 (1992). An adequate foundation is laid when a document is identified and authenticated (*Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000)), and "[t]o authenticate a document, evidence must be presented to demonstrate that the document is what its proponent claims" (*Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 247-48 (1991)). "It is well established in Illinois that sound recordings, which are otherwise competent, material[,] and relevant, are admitted in evidence if a proper foundation has been established to assure the authenticity and reliability of the recordings." *People v. Melchor*, 136 Ill. App. 3d 708, 711 (1985). A proper foundation is made when a party to the recorded conversation testifies to the recording's accuracy and the defendant does not claim that the recording has been altered. *People v. Johnson*, 122 Ill. App. 3d 532, 540 (1984).

Here, People's Exhibits 71 and 72 memorialized the information relayed to the ISPERN dispatchers by the officers in the field, and the officers' statements described the events that were occurring during the course of the high-speed chase as they were being perceived. Furthermore, the statements were made under circumstances that would naturally produce spontaneous and unreflecting statements with an absence of time to fabricate. The

16

statements were thus admissible as either spontaneous declarations or present-sense impressions, and proper foundations for the admission of the exhibits were laid.

Whether viewed as memorializations of present-sense impressions or spontaneous declarations or as business records admissible pursuant to section 115-5, the trial court did not abuse its discretion by admitting People's Exhibits 71 and 72 into evidence under recognized exceptions to the hearsay rule.[2] We cannot say that the probative value of the exhibits was outweighed by their potentially prejudicial effect, either.

"Evidence is considered relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of an action either more or less probable than it would be without the evidence." *Ursery*, 364 Ill. App. 3d at 686. Even where relevant, however, the admissibility of evidence may also depend upon whether the probative value of the evidence outweighs its prejudicial effect. *People v. Williams*, 181 Ill. 2d 297, 314 (1998). The determination of whether the probative value of evidence is outweighed by its prejudicial effect is left to the sound discretion of the trial court. *Williams*, 181 Ill. 2d at 314.

The relevant log entries from People's Exhibit 72 are shorthand notations of the events that were described to the ISPERN dispatchers (*e.g.*, "vehicle weaving in lanes," "vehicle attempting to ram police cars," "vehicle ran car off roadway," "[vehicle traveling at] speeds [approaching and above] 100 mph," and "stop sticks [placed on Interstate 270 near exit 9 by Glen Carbon police]"), primarily those described by the lead pursuing officer. On the recording of the ISPERN broadcast (People's Exhibit 71), House is heard advising all

---

[2]We note parenthetically that because the officers who supplied the information contained in the exhibits appeared for cross-examination at the defendant's trial, neither *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), nor the confrontation clause was implicated by the exhibits' admission. See *People v. Bueno*, 358 Ill. App. 3d 143, 153-55 (2005) (and cases cited therein).

"ISPERN units" of the existence of the pursuit, the description of the van, and many of the reported events, but for the most part, House is heard passing along information regarding the van's speed and changing location as that information is being communicated to him. The recording ends with House advising that the defendant had crashed the van and was in custody. Police sirens can be heard in the background at times, but the recording is not overly dramatic or discernibly inflammatory.

People's Exhibits 71 and 72 were relevant in that they provided a time line of the events that occurred in Illinois during the chase. The log was also used to establish that the pursuit ended in Granite City at 5:36 a.m. Although the State's witnesses testified to the same events as those described in the exhibits, "evidence may properly be admitted even if cumulative to oral testimony covering the same issue." *Williams*, 181 Ill. 2d at 315. Moreover, in a concise format, the exhibits placed the events in their proper sequence and could be viewed as relevant to the determination of the defendant's mental state. We would also note that while the State was allowed to play the recording during the trial, the trial court further ruled, in the exercise of its discretion, that the recording would not be sent back with the jury during deliberations. See *People v. Manuel*, 294 Ill. App. 3d 113, 126 (1997) (holding that audio exhibits "may be used by the jury during deliberations at the discretion of the trial court"). We cannot conclude that the trial court's decision to admit the exhibits was arbitrary, fanciful, or unreasonable, and even assuming *arguendo* that the trial court should not have admitted People's Exhibits 71 and 72, unless undue prejudice is apparent, "[r]eversal for improperly admitted hearsay evidence is not warranted where properly admitted evidence proves the same matter." *People v. Songer*, 229 Ill. App. 3d 901, 906 (1992); see also *People v. Monroe*, 366 Ill. App. 3d 1080, 1091-92 (2006) (noting that the erroneous admission of hearsay is harmless error when it is cumulative of the testimony provided by live witnesses subjected to cross-examination).

18

CONCLUSION

The evidence before the jury was sufficient to sustain its finding that the defendant was guilty of knowing first-degree murder beyond a reasonable doubt, and the trial court did not abuse its discretion by admitting People's Exhibits 71 and 72 into evidence. Accordingly, we affirm the defendant's convictions.

Affirmed.

SPOMER and STEWART[3], JJ., concur.

---

[3]Justice McGlynn participated in oral argument. Justice Stewart was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

NO. 5-05-0486

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 03-CF-3441 |
| | ) | |
| RICHARD ALSUP, | ) | Honorable |
| | ) | Ann Callis, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed**: April 16, 2007

**Justices**: Honorable James M. Wexstten, J.

Honorable Stephen L. Spomer, J., and
Honorable Bruce D. Stewart, J.,
Concur

**Attorneys for Appellant** — Daniel M. Kirwan, Deputy Defender, Dan W. Evers, Assistant Defender, Office of the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite # 300, Mt. Vernon, IL 62864

**Attorneys for Appellee** — Hon. William A. Mudge, State's Attorney, Madison County Courthouse, 157 N. Main Street, Edwardsville, IL 62025; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Kendra S. Peterson, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864