# Illinois Official Reports

## Appellate Court

---

### *People v. Meyers*, 2016 IL App (1st) 142323

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL MEYERS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-2323 |
| Filed<br>Rehearing denied | October 21, 2016<br>November 14, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 89-CR-27587; the Hon. Lawrence E. Flood, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Patricia Mysza, and Christopher L. Gehrke, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and John E. Nowak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Cunningham and Rochford concurred in the judgment and opinion. |

# OPINION

¶ 1　　　The defendant, Michael Meyers, appeals from the trial court's denial of his petition seeking relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 1994)). For the reasons that follow, we affirm.

¶ 2　　　The facts leading up to the defendant's conviction of two counts of first-degree murder and his sentence to natural life imprisonment are set forth in detail in this court's opinion in *People v. Young*, 263 Ill. App. 3d 627 (1994). Consequently, we will set forth only those facts necessary to an understanding of our resolution of the issues raised by the defendant in this appeal.

¶ 3　　　The defendant and six codefendants were charged with the shooting deaths of Dan Williams and Thomas Kaufman, which occurred near the Stateway Gardens housing complex (Stateway complex). The shootings occurred on November 9, 1989, at approximately 10 p.m. and originated from the ground and first floor porches of a building at 3517-3519 South Federal Street (building), which is located in the Stateway complex. The defendant and five codefendants were tried jointly before a jury.

¶ 4　　　At trial, Deanda Wilson, who was 12 years old at the time of the shooting, testified that he saw seven men dressed in black clothing, one of whom was the defendant, shoot at Williams. Specifically as to the defendant, Wilson testified that he saw him step out from under the building, retrieve a gun from under his coat, and fire at Williams. According to Wilson, Williams stumbled through a play lot toward a building occupied by the Illinois Institute of Technology (IIT) and eventually fell in the revolving door of the building. The defendant and the other six men fled the scene with guns in their hands.

¶ 5　　　The trial testimony of IIT security personnel established that the group of assailants chased Williams towards the IIT building, firing multiple gunshots. Several of the bullets struck and killed Kaufman, an IIT security guard stationed inside of IIT's front door.

¶ 6　　　A.W., the minor girlfriend of one of the codefendants, Kevin Young, testified that, several hours before the shooting, she was in an apartment located in the Stateway complex with five men, including the defendant. According to A.W., the five men left the apartment at approximately 10 p.m., each dressed in black and carrying a gun. She testified that, when the defendant and his four companions returned to the apartment approximately 20 minutes later, they were wearing ski masks or stocking caps over their faces.

¶ 7　　　Following the trial, the jury found the defendant guilty of two counts of first-degree murder, and he was sentenced to natural life imprisonment. On appeal, this court affirmed the defendant's conviction and sentence. *Young*, 263 Ill. App. 3d at 643.

¶ 8　　　In 1995, the defendant filed a *pro se* petition for postconviction relief pursuant to the Act. In 2000, counsel representing the defendant filed a supplemental petition, asserting in relevant part: (1) the defendant's actual innocence based upon newly discovered evidence consisting of Wilson's recantation of his trial testimony and (2) ineffective assistance of trial counsel, George Nichols, for having failed to interview or call Sherrie Parker both as an alibi witness and for the purpose of impeaching the testimony of A.W. The supplemental petition was supported by Parker's affidavit, stating, *inter alia*, that the defendant came to her apartment at approximately 9:30 p.m. on the night of the shooting and left at about 10 p.m. The affidavit stated that she heard gunshots "[a]lmost immediately after [he] *** left [her] apartment."

Parker averred that she did not know who Nichols was and that she never spoke to him about the shooting. Following an evidentiary hearing confined to the issue of Wilson's recantation, the trial court denied the defendant postconviction relief based upon newly discovered evidence and dismissed the defendant's claim of ineffective assistance of trial counsel without a hearing. The defendant appealed, and this court affirmed that portion of the trial court's order that rejected Wilson's recantation as a basis for granting the defendant postconviction relief, but found that the trial court erred in dismissing the portion of the defendant's petition that sought relief based upon ineffective assistance of trial counsel without an evidentiary hearing. As a consequence, we reversed that portion of trial court's order dismissing the defendant's ineffective-assistance claim and remanded the matter back to the trial court for further proceedings consistent with the mandates of the Act. *People v. Meyers*, No. 1-06-0214 (2008) (unpublished order under Supreme Court Rule 23).

¶ 9 On remand, the defendant's postconviction counsel, Assistant Public Defender (APD) Timothy Leeming, filed a motion to withdraw after reviewing trial counsel's file and concluding that, contrary to the assertions in the defendant's petition, Nichols contacted and interviewed Parker prior to trial. The trial court granted the motion and invited the State to file a motion to dismiss the defendant's postconviction petition. Thereafter, the State filed the invited motion which the trial court granted, and the defendant appealed. Initially, this court issued an order affirming the dismissal. However, after granting the defendant's petition for rehearing, we vacated our original order and entered an order reversing the dismissal of the defendant's petition and remanded the matter back to the trial court for further proceedings. *People v. Meyers*, 2012 IL App (1st) 102398-U, ¶¶ 17-18.

¶ 10 On remand, the trial court held a third-stage postconviction evidentiary hearing, addressing the defendant's claim that he received ineffective assistance based upon his trial counsel's failure to interview Parker or call her to testify both as an alibi witness and for the purpose of impeaching A.W.'s testimony. At the evidentiary hearing, the defendant and Parker testified in support of the petition, and APD Leeming, Detective Edward Winstead, and Investigator Brannigan testified for the State. In addition to the witness's testimony, the parties stipulated that the defendant's trial attorney, Nichols, was dead.

¶ 11 The defendant denied any involvement in the shooting of Williams and Kaufman and also denied having made any postarrest statements regarding the shootings. According to the defendant, he was at Parker's apartment when the shootings took place. He testified that he and Parker were in the hallway of her apartment building when he heard gunfire. On cross-examination, however, the defendant acknowledged that he made a motion prior to trial to suppress his postarrest statements. The defendant testified that he told Nichols that he was with Parker at the time of the shooting. He also stated that, on the date of his trial, Nichols told him that he knew that Parker was in the courthouse, but that he did not plan to call her as a witness.

¶ 12 Parker testified that the defendant came to her apartment on the day of the shooting. Although she was unsure of the exact time of the defendant's arrival, she recalled that it was before 10 p.m. and that it was dark outside. According to Parker, the defendant had been at her apartment for at least 30 minutes and was near the front door, about to leave, when she heard shots. She testified that the defendant's trial attorney did not meet with her before trial and did not believe that anyone working for the attorney ever spoke to her. Parker did acknowledge, however, that someone came to talk to her before the trial, but it was not the defendant's

attorney. Parker stated that she received a subpoena to testify at the defendant's trial, came to court, and waited outside of the courtroom. According to Parker, she was willing to testify but was never called as a witness.

¶ 13    Parker identified her signature on the affidavit that was attached to the defendant's supplemental postconviction petition. She stated that she did not know who prepared the affidavit or who brought it to her for her signature. She testified that she read the affidavit and decided to sign it, despite the fact that it contained inaccuracies. Although the affidavit states that Parker heard gunshots almost immediately after the defendant left her apartment, she testified that she and the defendant were in the process of leaving her apartment when she heard gunshots. Contrary to the statement in her affidavit, Parker denied that she saw an individual carrying a gun running from the scene of the shootings. She admitted that, in 2009, she spoke to an investigator, who questioned her about her affidavit, and acknowledged that she told the investigator that the defendant was in her apartment at 3 p.m. and that the shooting took place during daylight hours. She also testified that she told the investigator that parts of her affidavit were untrue. Although Parker remembered that, in 2013, she spoke to two investigators who questioned her about her affidavit, one of whom was the same investigator to whom she spoke in 2009, she did not recall telling those investigators that the shooting took place at either 3 p.m. or 7 p.m. She also remembered speaking to someone in an office who might have been APD Leeming. Throughout her testimony, Parker reiterated that it was dark when the shooting took place, although she was unsure as to the exact time. In addition, Parker admitted to daily drug use in 1989.

¶ 14    Investigator Brannigan testified that he interviewed Parker in both 2009 and 2013. He stated that, when he interviewed Parker in 2009, she told him that the defendant was with her at 3 p.m. when the shooting occurred and that she remembered that it was light outside. According to Brannigan, when he interviewed Parker again in 2013, she told him that the shooting took place at approximately 7 p.m. and that the defendant was with her at the time, "probably" doing drugs in her apartment. Brannigan admitted, however, that both in 2009 and 2013, Parker stated that the defendant was with her inside of her apartment building when she heard gunshots.

¶ 15    Detective Winstead testified that he interrogated the defendant after he was taken into custody. According to Winstead, the defendant told him that he went to the location of the shooting to buy marijuana where he saw his five codefendants. Winstead stated that the defendant also told him that he saw Williams walking and heard someone tell Williams to stop after which a group of men began shooting at Williams. However, the defendant did not identify the men who he saw shooting. Winstead testified that the defendant told him that he would cooperate if the police "took care" of other unrelated charges which were pending against him. He admitted that the defendant always denied any involvement in the shooting. In addition, he stated that, during the course of his interrogation, the defendant never mentioned Parker.

¶ 16    The parties stipulated that, if called as a witness, Assistant State's Attorney (ASA) Jerry Marconi would testify that the defendant gave him an account of events similar to the statement he gave to Detective Winstead. Neither the statement that the defendant gave to Detective Winstead nor the one that he gave to ASA Marconi was committed to writing, and the State never introduced evidence of either statement at the defendant's trial.

¶ 17    APD Leeming testified that, in 2009, he was assigned to represent the defendant in his postconviction proceeding. According to Leeming, he found his office's trial file, which contained notes of an interview of Parker on March 27, 1990. There is no reference in those notes that Parker said that she was with the defendant at the time of the shooting. Leeming admitted that he had "no idea" who composed the notes. He testified that he interviewed Parker in his office and went through her affidavit. He stated that she told him that the shooting occurred at about 3 p.m. Leeming also testified that he and a law student named David Weiss interviewed Nichols at his home in 2010 and notes were taken of that interview. According to Leeming, the interview did not establish whether Nichols did, or did not, meet with Parker prior to the defendant's trial. When Leeming was shown a document purporting to be Weiss's notes of his interview of Nichols on March 8, 2010, Leeming testified that he did not recognize the notes but assumed that they were accurate. The defendant's counsel sought to have the notes admitted in evidence, but the State objected based on lack of foundation. The trial court sustained the objection, stating that, unless Weiss was called as a witness, the notes could not be admitted. Weiss was never called as a witness.

¶ 18    After the close of the evidence, the trial court made a number of statements which, when taken as a whole, make it clear that it found portions of the testimony of both the defendant and Parker lacking in credibility. However, the trial court never made any specific credibility finding addressed to the defendant's assertion that he informed his trial attorney that he was with Parker at the time of the shooting. Commenting on the defendant's claim that he was with Parker, the trial court summarized the testimony of Detective Winstead, who stated that the defendant gave a statement admitting that he was at the scene of the shooting to purchase marijuana and that he observed the shooting but was not involved. The court also noted the parties' stipulation that, if called as a witness, ASA Marconi would testify that the defendant made essentially the same statement to him. The court commented that the defendant's testimony denying that he gave any postarrest statements was impeached by the presence in the record of his pretrial motion to suppress the statements.

¶ 19    After summarizing the evidence, the trial court found that the reasonable inferences to be drawn from the totality of the evidence presented at the postconviction hearing are that "George Nichols was aware of Sherry [*sic*] Parker and as a matter of trial strategy decided not to call her." The trial court then concluded that the defendant failed to establish by a preponderance of the evidence that his constitutional rights had been violated and denied his petition for postconviction relief. This appeal followed.

¶ 20    In urging reversal of the denial of his postconviction petition, the defendant argues that the trial court erred in sustaining the State's objection to the admission into evidence of Weiss's notes of APD Leeming's interview of Nichols or, in the alternative, that his postconviction counsel did not provide reasonable assistance by failing to call Weiss as a witness to establish a foundation for the admission of his notes. In either case, the defendant requests that we reverse the denial of his postconviction petition and remand the matter back to the trial court for a new evidentiary hearing.

¶ 21    We apply a manifestly erroneous standard to our review of a trial court's denial of a postconviction petition after a third-stage evidentiary hearing, and we accord great deference to the trial court's factual determinations. *People v. Childress*, 191 Ill. 2d 168, 174 (2000).

¶ 22    We first address the defendant's argument that the trial court erred in sustaining the State's objection to the admission into evidence of Weiss's notes of APD Leeming's interview of

Nichols. According to the defendant, the excluded notes support his claim that his trial attorney rendered ineffective assistance by failing to interview Parker or call her as a witness at his trial; rebut the State's argument that his trial attorney interviewed Parker, and strategically decided not to call her as a witness; and impeach APD Leeming's testimony regarding his interview of Nichols.

¶ 23    Whether evidence is admitted in an evidentiary hearing on a postconviction petition is a matter committed to the sound discretion of the trial court, and its decision in the matter will not be disturbed on review absent an abuse of that discretion. *People v. Jones*, 2012 IL App (1st) 093180, ¶ 52. A trial court abuses its discretion in admitting or refusing to admit evidence when its decision is " 'arbitrary, fanciful or unreasonable' or when 'no reasonable [person] would take the view adopted by the trial court.' " *Id.* (quoting *People v. Donoho*, 204 Ill. 2d 159, 182 (2003)). We find no abuse of discretion in this case.

¶ 24    When APD Leeming was confronted with a copy of Weiss's notes of his interview of Nichols, he testified that he did not recognize the notes, and there is no evidence in the record authenticating them. Authentication is a necessary element of the foundation necessary for the admission of documentary evidence. *People v. Alsup*, 373 Ill. App. 3d 745, 758 (2007). In the absence of evidence authenticating Weiss's notes, the trial court did not err in sustaining the State's objection to their admission on foundational grounds.

¶ 25    We turn next to the defendant's argument that his postconviction counsel provided unreasonable assistance by failing to call Weiss as a witness to establish a foundation for the admission of his notes of the Nichols interview into evidence. According to the defendant, Weiss's notes were affirmative proof of his trial attorney's failure to interview Parker and went directly to the central issue in the case. He argues that, assuming the trial court properly declined to admit Weiss's notes on foundational grounds, postconviction counsel's failure to call Weiss as a witness to provide a proper foundation for his notes amounted to unreasonable assistance, entitling him to a new evidentiary hearing. We conclude, however, that the defendant's unreasonable assistance claim fails because he cannot show that he was prejudiced by counsel's failure to call Weiss as a witness.

¶ 26    The right to counsel in a postconviction proceeding is wholly statutory in origin. *People v. Lander*, 215 Ill. 2d 577, 583 (2005). As a consequence, a postconviction petitioner is entitled only to the level of assistance provided by the Act. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). The Act requires that counsel provide a reasonable level of assistance. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007).

¶ 27    Assuming for the sake of analysis only, but not deciding, that Weiss's notes, although hearsay, could have been admitted in evidence (see Ill. R. Evid. 1101(b)(3) (eff. Jan. 6, 2015)), if Weiss had been called as a witness and had authenticated them, we would still find that the defendant suffered no prejudice by reason of postconviction counsel's failure to call Weiss as a witness. If admitted, Weiss's notes would only have been relevant to the issue of whether Nichols interviewed Parker. However, as noted earlier, the trial court did not rest its conclusion that Nichols's decision not to call Parker as a witness was based upon his interview of her. Rather, the trial court found that Nichols was aware of Parker and "as a matter of trial strategy decided not to call her." We believe that the trial court's determination that Nichols's decision not to call Parker as a witness was a matter of trial strategy is adequately supported by the record even assuming, as the defendant contends, that Nichols never interviewed Parker.

¶ 28    There is no question that Nichols was aware of Parker. The defendant testified that he told Nichols that he was with Parker in her apartment at the time of the shooting and that she was willing to testify to that effect. Nichols listed Parker as a potential witness in answer to discovery and issued a subpoena commanding her to appear at the defendant's trial. The evidence also established that, although he was aware that Parker was present in the courthouse on the day of the defendant's trial, Nichols decided not to call her as a witness. According to the defendant, Nichols told him on the day of trial that he did not plan to call Parker as a witness. Clearly, Nichols's decision in that regard was a matter of strategy. The question remains whether the strategy was reasonable under the circumstances.

¶ 29    Had Parker testified that the defendant was with her at the time of the shooting, the State could have called Detective Winstead and ASA Marconi as rebuttal witnesses to testify to the defendant's postarrest statements placing himself at the scene of the shooting. Clearly, Nichols was aware that the State was able to introduce evidence of the defendant's postarrest statements as he not only filed a pretrial motion to suppress those statements, he also filed a pretrial motion *in limine* seeking to bar the State from using those portions of the defendant's statement relating to his use of marijuana. In relevant part, the body of the motion *in limine* states: "In his statement to the police the defendant stated that he came to the vicinity of the shooting to buy marijuana." We believe that declining to call an alibi witness whose testimony could be contradicted by the defendant's own postarrest statements as to his whereabouts falls within the realm of reasonable trial strategy, even if the known alibi witness had never been interviewed.

¶ 30    Weiss's testimony and his notes are relevant only to the question of whether Nichols interviewed Parker prior to deciding not to call her as an alibi witness. However, having found that the trial court's determination that Nichols' decision not to call Parker as a witness was a matter of trial strategy is adequately supported by the record even assuming that Nichols never interviewed Parker, we conclude that the defendant suffered no prejudice by reason of his postconviction counsel's failure to call Weiss as a witness, and therefore, his claim of unreasonable assistance fails.

¶ 31    We are left then with the question of whether the trial court's ultimate conclusion that the defendant failed to establish by a preponderance of the evidence that his constitutional rights had been violated and its consequential denial of his postconviction petition are manifestly erroneous. As the defendant's claim to postconviction relief was predicated upon the argument that his trial attorney, Nichols, was ineffective for failing to interview Parker or call her as an alibi witness at trial, it was his burden to show (1) that Nichols's performance in that regard fell below an objective standard of reasonableness and (2) that he was prejudiced by that deficient performance. Both prongs of this test must have been satisfied in order to establish ineffective assistance of counsel and failure to establish either prong is fatal to the claim. *Strickland v. Washington*, 466 U.S. 668, 687, 697 (1984).

¶ 32    In this case, the trial court found that the reasonable inference to be drawn from the totality of the evidence presented at the postconviction hearing is that Nichols's decision not to call Parker as a witness was a matter of trial strategy. For the same reasons articulated in our analysis of the defendant's claim of unreasonable assistance by postconviction counsel, we find that the trial court's determination in this regard is amply supported by the evidence. We, therefore, affirm the trial court's denial of the defendant's postconviction petition as its conclusion that the defendant failed to establish by a preponderance of the evidence that his

constitutional rights had been violated is not manifestly erroneous.

¶ 33          Affirmed.