NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200003-U

NO. 4-20-0003

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 25, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| BRANDON M. BOLING, | ) | No. 11CF323 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mitchell Kevin Shick, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justice Harris concurred in the judgment.
Justice Steigmann specially concurred.

**ORDER**

¶ 1    *Held*:The trial court's denial of defendant's ineffective of assistance of counsel claim related to the admissibility of the victim's hearsay statements was not manifestly erroneous.

¶ 2    In February 2012, a jury convicted defendant, Brandon M. Boling, of two counts of predatory criminal sexual assault of a child, K.A. (born in October 2002), but those convictions were reversed on appeal, and the case was remanded for a retrial. *People v. Boling*, 2014 IL App (4th) 120634, ¶ 144, 8 N.E.3d 65. Prior to the initial trial, the trial court had conducted a hearing at which it admitted K.A.'s hearsay statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-10 (West Supp. 2009)). In October 2014, prior to the second trial, the State disclosed to defendant K.A. had recently made statements that were inconsistent with her section 115-10 statements. A second

jury convicted defendant of two counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse.

¶ 3 In June 2018, defendant filed a postconviction petition alleging, in pertinent part, defendant received ineffective assistance of trial counsel because trial counsel failed to object to K.A.'s section 115-10 statements at the second trial and request a new section 115-10 hearing. In December 2019, the Coles County circuit court conducted a third-stage evidentiary hearing and denied defendant's postconviction petition.

¶ 4 Defendant appeals, arguing only the trial court erred by denying defendant's claim trial counsel was ineffective for not objecting to K.A.'s section 115-10 statements or seeking a new section 115-10 hearing after K.A. later made statements inconsistent with her section 115-10 statements. We affirm.

¶ 5 I. BACKGROUND

¶ 6 A. The Charges

¶ 7 In July 2011, the State charged defendant with three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2010)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2010)) for his actions that occurred in March 2011.

¶ 8 B. The State's Motion to Admit Statements Pursuant to Section 115-10

¶ 9 In January 2012, the State filed a motion *in limine* pursuant to section 115-10 of the Procedure Code (725 ILCS 5/115-10 (West Supp. 2009)) in which it asked the trial court to "make an evidentiary determination that certain statements made by the victim herein are admissible in the trial of this cause pursuant to 725 ILCS 5/115-10." The State identified those statements as having been made by K.A. (1) on July 8, 2011, to Jamie Burwell, (2) on July 8,

2011, to Ryan West, (3) on July 9, 2011, to Mattoon Police Department Officer Scott Robison, and (4) on July 9, 2011, to Mattoon Police Department Lieutenant Detective Jonathan Seiler.

¶ 10 The trial court conducted hearings on the State's motion and concluded the statements, other than those made to Robison, would be admissible under section 115-10.

¶ 11 C. The First Trial

¶ 12 In February 2012, the trial court conducted defendant's first jury trial. Prior to jury selection, the State announced it would dismiss count IV, the count of aggravated criminal sexual abuse. The jury convicted defendant of two counts of predatory criminal sexual assault of a child involving contact between defendant's penis and K.A.'s anus and sex organ, but acquitted defendant of the remaining count involving contact between his mouth and K.A.'s sex organ.

¶ 13 In April 2012, the trial court sentenced defendant to two consecutive terms of 31 years in prison. On direct appeal, this court reversed defendant's convictions and remanded for a new trial. *Boling*, 2014 IL App (4th) 120634, ¶ 144.

¶ 14 D. The Second Trial

¶ 15 Prior to the second trial, the State confirmed with the trial court the court's prior rulings "[w]ith regard to *** 115-10 and such" remained in "full force and effect." The court also ruled K.A.'s statements to Noelle Cope, a nurse who conducted a medical examination of K.A., were admissible pursuant to section 115-10.

¶ 16 The State refiled count IV, which was the count it had dismissed prior to the first trial. The State also filed a new charge, count V, which alleged defendant committed predatory criminal sexual assault of a child by placing "his hand or finger on" K.A.'s sex organ.

¶ 17 In October 2014, prior to the second trial, the State notified defendant K.A. had recently made statements about defendant's actions that were inconsistent with her section

115-10 statements. The parties entered into a written stipulation, which was later presented to the jury at defendant's second trial, which stated, in pertinent part, the following:

"The parties stipulate that [K.A.], the victim in this cause, while preparing for trial testimony on October 22, 2014, at one time stated that she did not remember whether or not Defendant's penis made physical contact with her sex organ or anus. At another time, she stated that Defendant's penis did not make contact with her sex organ or anus. She stated that she was lying face down on her mother's bed with Defendant lying on top of her, facing her. His pants were down, and he was trying to pull her pants down, but she would always resist and pull her pants back up. She stated that at some point she was on her back. He was attempting to touch his penis to her sex organ and anus, but was never successful as she was struggling against him."

¶ 18     In October 2014, the trial court conducted defendant's second jury trial. K.A. testified defendant touched her in a way that made her feel uncomfortable. She could not remember how often the touching occurred, but it was more than once and less than 10 times. K.A. testified defendant would kiss her neck and put his hand on her "front part." K.A. could not remember defendant touching other parts of her body, other than her breasts, and she could not remember if he touched her body with any part of his body other than his hands. We note K.A.'s testimony was more similar to what was contained in the written stipulation than in her section 115-10 statements. Particularly, in K.A.'s section 115-10 statement to Seiler, she described what amounted to defendant's inserting his sex organ into her vagina and buttocks, but in the parties' stipulation, she denied this occurred.

¶ 19     Reardon, K.A.'s aunt, testified she had a conversation with K.A. about

- 4 -

appropriate and inappropriate touching. Reardon testified K.A. told her defendant had "put his privates on her privates."

¶ 20        Cope, a nurse, testified she conducted a physical examination of K.A. which revealed no evidence of sexual assault. Cope testified K.A. told her defendant took K.A. into K.A.'s mother's bedroom and, with the bottoms of their clothing off, defendant got on top of K.A. and rubbed his body up and down her. K.A. told Cope defendant was "rubbing hard on her bad spot with his hand and his fingers." Cope testified she questioned K.A. about whether defendant's penis went inside her vagina, and K.A. replied it rubbed on the outside but did not know if it penetrated her. Cope further testified K.A. told her there had been earlier instances of this conduct when defendant babysat her.

¶ 21        Detective Seiler testified he interviewed K.A., who told him defendant touched her genital area with his hands and privates both inside and outside.

¶ 22        The jury convicted defendant of two counts of predatory criminal sexual assault of a child (penis in sex organ and hand/finger in sex organ) and one count of aggravated criminal sexual abuse (hands on breasts). Defendant was acquitted of count II, predatory criminal sexual assault (penis in anus).

¶ 23        The trial court later sentenced defendant to 31 years in prison on each count of predatory criminal sexual assault of a child and 5 years on the count of aggravated criminal sexual abuse, all to be served consecutively.

¶ 24        Defendant appealed, and this court vacated defendant's conviction for predatory criminal sexual assault of a child by placing his hand or finger in K.A.'s sex organ. *People v. Boling*, 2017 IL App (4th) 150076-U, ¶ 60. The matter was remanded for further proceedings on that count, but the State decided to not retry defendant. Defendant was left with sentences of 31

years and 5 years, to run consecutively.

¶ 25                                    E. The Postconviction Petition

¶ 26        In June 2018, defendant filed a postconviction petition alleging, in pertinent part,

defendant received ineffective assistance of trial counsel because trial counsel failed to object to

K.A.'s section 115-10 statements or request another section 115-10 hearing.  The trial court

determined defendant stated the gist of a constitutional claim and advanced his petition to the

second stage.  The State then filed a motion to dismiss.

¶ 27        In July 2019, the trial court conducted a hearing on the State's motion to dismiss.

Following lengthy arguments from both parties, the court granted the motion to dismiss in part

and dismissed some of defendant's claims.  However, for defendant's remaining claims, the

court stated as follows:

> "I think it is a close case, even at this stage, as to whether or not the
>
> remaining ineffective assistance of counsel claims justify or would allow
>
> additional evidence in this case.  However, I think out of an abundance of caution,
>
> I am going to give [defendant] an opportunity to present any additional evidence
>
> he may have as it relates to those issues.  So, I am going to deny the Motion to
>
> Dismiss as it relates to those issues ***.
>
>                                    * * *
>
> As it relates to filing a Motion to Reconsider the Court's earlier ruling
>
> allowing 115-10 witnesses to testify as to hearsay, I am trying to get my head
>
> around what—how the new statements made or the new interview made of K.A.
>
> would have convinced me to reconsider Judge Glenn's ruling in this case, and not
>
> allow these prior statements made closer in time.  But I will allow further briefing

- 6 -

and argument on that issue. I am not sure there is any evidence—more evidence to be offered. But I do want to review any more case law that you might have regarding how subsequent testimony can somehow render a prior ruling authorizing 115-10 witnesses to testify to hearsay, somehow inadmissible."

¶ 28        On December 5, 2019, the trial court conducted defendant's third-stage evidentiary hearing. Defendant asserted his counsel during his second trial was ineffective by not objecting to the admission of K.A.'s section 115-10 statements because the inconsistencies between K.A.'s more recent statements, as set forth in the stipulation, and K.A.'s section 115-10 statements showed K.A.'s section 115-10 statements were unreliable and should not have been admitted.

¶ 29        Anthony Ortega, defendant's counsel at his second trial, testified K.A.'s section 115-10 statements and the stipulation were presented to the jury at the second trial. Ortega testified regarding the inconsistencies between the section 115-10 statements and the stipulation. Ortega testified he was aware of the section 115-10 hearing the court conducted prior to the first trial and did not request a new hearing before the second trial. Ortega acknowledged the prior ruling allowing all of the hearsay evidence offered in the first trial also applied at the second trial since he did not request a new section 115-10 hearing. He admitted the second trial would have been completely different if the hearsay evidence would have been excluded. Postconviction counsel asked Ortega, "[Y]ou could have asked for a 115-10, saying, Your Honor, we have inconsistency here. I think we need to review the reliability of the interviews?" Ortega replied, "Honestly, that's a legal question. I mean, I will be honest, that's not something I considered asking for. And I guess I will leave it to the courts to decide if that's something I should have done or if that was an option."

¶ 30        During postconviction counsel's redirect examination of Ortega, the trial court indicated it could address the legal issue involved and then stated the following:

> "In reviewing the law, I can say from the evidence in this case I would not have granted a new hearsay hearing, because the only change had been the fact that after years had passed, that the child witness now had a much worse memory of the events. And that doesn't call into question, I think it was Judge Glenn, his decision on the reliability of the statements made at the time they were made. This would have been evidence that, with the years that passed of a young witness of tender years, that the memories fade.
>
> I don't think that, under the statute, means that I should reverse Judge Glenn's opinion, or it could have been mine, my earlier opinion, that the reliability was established at the initial hearing. I don't think that's required under the statute. You haven't cited any case law that supports your position.
>
> So, with respect to that, I am going to find against that part of your petition, that Mr. Ortega somehow was ineffective for [not] asking for that, because he wouldn't have been allowed to have a new hearing, and those statements would have come into evidence. The ruling would have been consistent with what Judge Glenn had ruled. And in fact, the stipulation armed him with more evidence or better evidence as to inconsistencies that would go to your client's innocence, and the fact that the State had not met their burden of proof beyond a reasonable doubt, based upon these new inconsistent statements."

At the conclusion of the evidentiary hearing, the court denied the remainder of defendant's postconviction petition.

¶ 31        On January 2, 2020, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017).  See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings).  Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 32                                II. ANALYSIS

¶ 33        On appeal, defendant only challenges the circuit court's denial of his claim of ineffective assistance based on trial counsel's failure to object before defendant's second trial to K.A.'s section 115-10 statements or seek a new section 115-10 hearing after K.A. later made statements inconsistent with her section 115-10 statements.

¶ 34        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)), provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial.  *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006).  It sets forth three stages of proceedings.  *Pendleton*, 223 Ill. 2d at 471-72, 861 N.E.2d at 1007.  At the first stage, the circuit court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit."  725 ILCS 5/122-2.1(a)(2) (West 2018).  If it finds the petition is frivolous or patently without merit, the court must dismiss the petition.  725 ILCS 5/122-2.1(a)(2) (West 2018).  If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints the defendant counsel.  *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007.  Postconviction counsel may amend the defendant's petition to ensure his or her contentions are adequately presented.  *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007.  Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it.  *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at

- 9 -

1008.  If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition.  *Pendleton*, 223 Ill. 2d at 472-73, 861 N.E.2d at 1008.

¶ 35        At both the second and third stages of the postconviction proceedings, "the *defendant bears the burden* of making a substantial showing of a constitutional violation." (Emphasis added.)  *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008.  When, as in this case, a petition advances to an evidentiary hearing and fact-finding and credibility determinations are involved, this court will not reverse the circuit court's decision unless it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008.  A "manifest error" is one that "is clearly evident, plain, and indisputable."  *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997).

¶ 36        This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999).  To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant.  *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.  To satisfy the deficiency prong of Strickland, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment.  *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163.  Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy.  *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163.  To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result

- 10 -

would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 37 In this case, before defendant's second trial in October 2014, the parties entered into a written stipulation, which stated K.A., while preparing for trial testimony, made statements about defendant's criminal conduct that differed from her section 115-10 statements. Specifically, before the second trial, K.A. had stated on one occasion she could not remember if defendant's penis touched her sex organ or anus and, on another occasion, stated defendant's penis did not make contact with her sex organ or anus. In her hearsay statements admitted under section 115-10, K.A. had stated defendant put his penis on her sex organ. Defendant contends his counsel was ineffective for not renewing a challenge to the admissibility of K.A.'s section 115-10 statements due to the new inconsistent evidence and asserts such a challenge might have kept those statements from being admitted at his second trial. He claims, before his second trial, his defense counsel should have asked for a renewed section 115-10 hearing at which the trial court could have reconsidered its earlier decision finding K.A.'s statements were admissible under section 115-10. We note the section 115-10 hearing was commenced by the State filing a motion *in limine*, and rulings on motions *in limine* are always subject to reconsideration. *People v. Drum*, 321 Ill. App. 3d 1005, 1008, 748 N.E.2d 344, 347 (2001).

¶ 38 At the section 115-10 hearing before the February 2012 trial, the trial court found the time, content, and circumstances of K.A.'s out-of-court statements had sufficient safeguards of reliability to be admissible at trial. See 725 ILCS 5/115-10 (West Supp. 2009). Three years after the incidents and original statements, K.A. made some inconsistent statements about where

defendant's penis had touched her body. The trial court found, even with the new evidence, it would not have granted a request, had one been made, for a new section 115-10 hearing. The court noted K.A. had a "much worse" memory of the events, which the court did not think called into question the decision on the reliability of the statements made at the time they were made. In this case, K.A. neither recanted her earlier statements nor indicated her previous statements were false or inaccurate. Indeed, K.A.'s new statements made no reference to her prior statements. Additionally, when K.A. made the new statements, more than three years had passed since the incidents, and K.A. was young when the abuse occurred. As the trial court found, those facts indicate the inconsistency in the statements was due to K.A.'s fading memory. A victim's faded memory alone is insufficient to raise questions about the timing and circumstances under which the victim's prior statements were made. Thus, we find the trial court's determination was not manifestly erroneous. As such, defendant cannot show he was prejudiced by his counsel's failure to challenge the admissibility of K.A.'s section 115-10 statements at defendant's second trial or to request a new section 115-10 hearing. Accordingly, the trial court properly denied defendant's ineffective assistance of counsel claim related to K.A.'s section 115-10 statements.

¶ 39                                III. CONCLUSION

¶ 40          For the reasons stated, we affirm the Coles County circuit court's judgment.

¶ 41          Affirmed.

¶ 42    JUSTICE STEIGMANN, specially concurring:

¶ 43    My distinguished colleagues in the majority conclude that the trial court, after conducting a third-stage evidentiary hearing, did not err by rejecting defendant's claim that he was prejudiced by his trial counsel's failure to challenge the admissibility of K.A.'s section 115-10 statements at defendant's second trial or to request a new section 115-10 hearing.  I agree with that conclusion, but I wish to offer in this special concurrence additional reasons why the trial court was correct to reject defendant's claim that his trial counsel rendered ineffective assistance.

¶ 44    Defendant's postconviction petition alleged that his trial counsel was ineffective for not objecting to K.A.'s section 115-10 statements after she arguably "admitted that [defendant] did not commit the offense of predatory criminal sexual assault of a child as alleged in Count I."  In other words, defendant argues that trial counsel's "failure to object and seek a new 115-10 hearing regarding the reliability of [K.A.'s] initial statements constituted ineffective assistance of counsel."  The trial court's decision to deny defendant's postconviction petition was proper because any objection prior to defendant's second trial to the admissibility of K.A.'s section 115-10 statements would not have been meritorious.

¶ 45                I. THE BASIS OF DEFENDANT'S CLAIM

¶ 46    At the section 115-10 hearing before defendant's first trial, the trial court found that the time, content, and circumstances of K.A.'s statements to Burwell, West, and Seiler provided sufficient safeguards of reliability to be admissible at trial.  Before defendant's second trial in October 2014, the parties entered into a written stipulation that K.A., while preparing for trial testimony, made statements about defendant's criminal conduct in this case that differed from her section 115-10 statements.  Defendant contends his counsel was ineffective for not renewing a challenge to the admissibility of K.A.'s section 115-10 statements on this basis, which he asserts

- 13 -

might have kept those statements from being admitted at his second trial. Defendant claims that before his second trial, his defense counsel should have asked for a renewed section 115-10 hearing at which the trial court could have reconsidered its earlier decision under section 115-10 that K.A.'s statements were admissible.

¶ 47 I disagree with defendant's argument and have trouble seeing how any trial testimony by a child victim—or, as here, a stipulation that the child victim now recalls matters differently than she did in her section 115-10 statements—could have an impact upon the trial court's earlier determination that the child victim's hearsay statements were admissible pursuant to section 115-10. After all, that determination is always retrospective—that is, the court is called upon to decide whether, when the child victim of a sex offense made out-of-court statements complaining of such acts to another, the time, content, and circumstances of the statements provided sufficient safeguards of reliability. See 725 ILCS 5/115-10(b)(1) (West 2020). If, in the usual case, the court determines that the child victim's statements to her teacher, social worker, police officer, parent, or other similarly concerned person meet those requirements, then why should the court need to conduct another section 115-10 hearing years later because the child victim now recalls the defendant's allegedly criminal conduct differently or perhaps even denies it occurred at all? In my view, inconsistencies between the child victim's section 115-10 statements and her later testimony at trial would not even address the issues before the trial court when it conducted the section 115-10 hearing and made its ruling that the child victim's hearsay statements were admissible.

¶ 48 For instance, consider a scenario (as is often the case) in which the child victim made statements to a teacher and a social worker about the criminal conduct of the accused. As is usually the case, the social worker's interview might even be video recorded. At the section 115-10

- 14 -

hearing, the teacher and social worker both testified, but the child victim herself did not. (Almost 30 years ago, this court held that live testimony of the child victim at a section 115-10 reliability hearing is not necessary to enable the trial court to evaluate whether sufficient safeguards of reliability existed when the child victim's statements were made. See *People v. Back*, 239 Ill. App. 3d 44, 54, 605 N.E.2d 689, 696 (1992)). Assuming the trial court determined at the section 115-10 hearing that the statements the child victim made to the teacher and social worker were admissible at trial because the court found the time, content, and circumstances of the child victim's statements to those people provided sufficient safeguards of reliability, it seems obvious that nothing that the child may say months or years later should undercut the court's finding. After all, the court's determination that the statements were admissible was not based on the child's testimony at the section 115-10 hearing; the court's determination was based upon its assessment of the testimony of the teacher and the social worker, as well as the child's statements themselves.

¶ 49    I should add that the reservations just expressed about a trial court's reconsidering its previous determination—made after conducting a section 115-10 hearing—that a child victim's hearsay statements were admissible do not apply in a situation in which the defendant claims he wishes to present evidence that will show that those statements were unreliable due to improper pressure or influence. That is, improper pressure or influence exerted upon the child *before or at the time* she made the statements at issue. In the above scenario, for instance, that would mean before or at the time she made the statements in question to the teacher and social worker.

¶ 50    However, that is not the claim defendant makes in this case. Here, as usually would be the case, defendant challenges the admissibility of K.A.'s section 115-10 statements merely because they are inconsistent with her trial testimony.

- 15 -

¶ 51                                    II. SUPPORTING CASELAW

¶ 52            Substantial caselaw exists to support the above conclusion.  In *People v. Monroe*, 366 Ill. App. 3d 1080, 1085, 852 N.E.2d 888, 895-96 (2006), the defendant argued that the trial court should not have permitted a witness to testify that the child victim had complained to him of being sexually abused by the defendant because the victim denied making those statements at trial. The defendant contended that even though the trial court had found the victim's hearsay statements reliable at a section 115-10 hearing, such "a pretrial determination of reliability *** should not be ironclad or unassailable [and] the events at trial must be taken into account in determining admissibility" under the statute.  (Internal quotation marks omitted.) *Id.*

¶ 53            The Second District noted that the defendant was essentially arguing that once the child victim failed to corroborate at trial the hearsay statements that were admitted through section 115-10, the trial court should have retroactively determined that the statements were not reliable and thus were inadmissible under section 115-10.  *Id.* at 1086.  The appellate court rejected that claim, explaining that "the defendant is attempting to add requirements to section 115-10 that simply do not exist." *Id.*  Further, "the statute does not provide any basis for holding that evidence presented at trial may undermine the trial court's findings of reliability at the prior section 115-10 hearing." *Id.*

¶ 54            In *People v. Perez*, 2021 IL App (1st) 180765-U, ¶ 60, the First District cited *Monroe* approvingly and held that "a ruling to admit statements pursuant to a section 115-10 hearing is not undermined by evidence later presented at trial; rather, the [trial] court's ruling is solely based on the section 115-10 hearing."

¶ 55            In *People v. Sundling*, 2012 IL App (2d) 070455-B, ¶ 39, 965 N.E.2d 563, the Second District cited *Monroe* approvingly and held that because the testimony in question of the

- 16 -

child sex victim occurred during the trial, "it should not be considered when reviewing the propriety of the trial court's pretrial ruling [allowing into evidence the child victim's hearsay statements pursuant to section 115-10]."

¶ 56　　　　In *People v. Lara*, 2011 IL App (4th) 080983-B, ¶ 38, 958 N.E.2d 719, the defendant argued that the trial court should have reversed its pretrial ruling pursuant to section 115-10 after the child victim testified at trial because the contradictions between her trial testimony and her recorded interview that was admitted pursuant to section 115-10 "rendered the interview unreliable." This court rejected that argument and concluded that the jury could have found the child victim's videotaped statement more complete and trustworthy than her trial testimony, given its proximity in time to the incident. *Id.* ¶¶ 40-42.

¶ 57　　　　This court has frequently reiterated the fundamental holding from the above cases—namely, that when determining whether a child victim's hearsay statements should be admissible under section 115-10, both trial courts and courts of review should focus on the evidence presented at the section 115-10 hearing, not on the evidence later presented at trial. See, for example, the following cases: *Back*, 239 Ill. App. 3d at 57 ("Unlike defendant's arguments in his brief, which contain references to trial testimony, we focus *only* on the evidence presented at the hearing to determine the admissibility of these statements." (Emphasis in original.)); *People v. Stull*, 2014 IL App (4th) 120704, ¶ 85, 5 N.E.3d 328 ("In so doing [(reviewing the admissibility of the hearsay statements)], we do not focus on the evidence presented at trial, but instead, only on the evidence presented at the pretrial hearing concerning the reliability of the victim's hearsay statements."); *People v. Applewhite*, 2016 IL App (4th) 140558, ¶ 65, 68 N.E.3d 986 ("Second, and more important, provided that the remaining provisions of section 115-10 are satisfied, whether a minor victim testifies consistently, inconsistently, or by not responding to questions

- 17 -

posed regarding the sexual acts alleged does not affect the admissibility—under section 115-10—of the minor's out-of-court statements to others that detailed a defendant's sexual acts."); *People v. Land*, 241 Ill. App. 3d 1066, 1075, 609 N.E.2d 1010, 1017 (1993) ("For clarity, we will detail the testimony presented at the section 115-10(b)(1) hearing because the trial court must determine whether the time, content, and circumstances provided sufficient safeguards of reliability based solely on the testimony presented at that hearing."); *People v. Burgund*, 2016 IL App (5th) 130119, ¶ 244, 66 N.E.3d 553 ("We also note that in analyzing the circuit court's ruling under section 115-10 of the Code, we must focus on the testimony admitted at the pretrial hearing rather than the testimony presented at trial.").

¶ 58          III. PERMITING A CHALLENGE TO A TRIAL COURT'S RELIABILITY

FINDING BECAUSE THE CHILD VICTIM'S LATER STATEMENTS

AT TRIAL ARE INCONSISTENT WITH HER SECTION 115-10

STATEMENTS WOULD BE CONTRARY TO ONE OF THE

PURPOSES OF THAT STATUTE

¶ 59          In my judgment, if a defendant were permitted to challenge a trial court's section 115-10 finding of reliability simply because the child victim's testimony at trial is inconsistent with her section 115-10 statements, then one of the essential purposes of that statute would be thwarted.  The Illinois Supreme Court has recognized that, in practice, one of the purposes of section 115-10 is to remove incentives from third parties to try to get child sex victims to "change their stories."  See *People v. Bowen*, 183 Ill. 2d 103, 116, 699 N.E.2d 577, 584-85 (1998) ("A recording close in time to the first outcry, prior to any charges being filed, where feasible, also makes the statement less likely to be the product of suggestion or even manipulation by overzealous prosecutors, parents or caseworkers."); *People v. Bastien*, 129 Ill. 2d 64, 77, 541

N.E.2d 670, 676 (1989) ("During [the time between a forensic interview pursuant to former section 106A-1 and trial], the child undoubtedly will have contact with the prosecutor and relatives who, consciously or unconsciously, may influence the child.").

¶ 60        Requiring a seven-year-old girl to testify in a courtroom full of strangers about sexual acts the defendant performed on her is hard enough; it would be made all the more difficult if friends or family of the defendant (or perhaps even the defendant himself) put pressure on the child victim "to change her story," emphasizing that if she does not, the defendant (and perhaps his family) would be seriously adversely affected. Given the large number of cases in which (1) family members, (2) members of the extended family, or (3) occasionally "mama's current boyfriend" are charged with committing sexual offenses upon a child, concerns about potential improper influences are quite real, and I am aware of cases in which the child victim has changed her story so as to exculpate a family member.

¶ 61        The incentive to pressure the child victim of a sex offense to change her testimony at trial is dramatically reduced if her hearsay statements to third parties have—prior to trial—been ruled to be admissible pursuant to section 115-10. The admission of the child victim's section 115-10 statements reduces the likelihood that pressure would be brought on the child victim to change her trial testimony simply because the importance of her trial testimony would be lessened.

¶ 62        IV. *PEOPLE V. COOKSON* DOES NOT

SUPPORT DEFENDANT'S ARGUMENT

¶ 63        In *People v. Cookson*, 215 Ill. 2d 194, 203-05, 830 N.E.2d 484, 489-91 (2005), the supreme court addressed the defendant's challenge to the admissibility of a child victim's hearsay statements that the trial court ruled admissible after conducting a section 115-10 hearing. The supreme court concluded that the State had "sufficiently shouldered its burden of proof" that the

victim's section 115-10 statements should be admitted. *Id.* at 204-05. In so concluding, the supreme court added the following: "While questions about the reliability of the [child victim's] statements may have arisen at trial, the record available at the time of the pretrial section 115-10 hearing supports the trial court's decision to admit the [victim's] hearsay statements." *Id.* at 205.

¶ 64 The supreme court also discussed the many assertions the defendant in that case raised about the child victim's testimony at trial, during which she sometimes appeared "mixed up." *Id.* at 207. The supreme court then wrote the following:

"Our review of the record, however, reveals the majority of these 'troubling aspect[s]' arose during trial. Therefore, the trial court could not have considered those factors when making its pretrial ruling on the admissibility of the hearsay statements. The trial court also did not have an opportunity to rectify this potential problem during trial. Defendant did not renew his objections to the hearsay testimony when it was presented at trial. *** Defendant did not *** apply [his contentions about admitting other claims of sexual abuse the child victim had made] to argue [the child victim's] hearsay statements [admitted pursuant to section 115-10] were inadmissible. Furthermore, defendant never formally requested at trial that the court revisit its pretrial ruling on the admission of the hearsay statements. Based on the record as it existed during the trial and the pretrial hearing on [the child victim's] hearsay statements, we conclude the trial court did not abuse its discretion in admitting those statements." *Id.* at 207-08.

¶ 65 The observations by the supreme court about what the defendant in *Cookson failed to do* constitute the sole basis in that case for a claim that a trial court's ruling—namely, that a child victim's hearsay statements met the criteria of section 115-10 and should be admitted—can

- 20 -

be second guessed or reconsidered based upon the victim's testimony at trial. However, I do not believe *Cookson* should be read in that fashion.

¶ 66 Almost 40 years ago, the legislature added section 115-10 to the Code of Criminal Procedure, and in all that time *no case* has ever approved or supported the claim defendant makes here—namely, a child victim's testimony at trial that is inconsistent with the victim's hearsay statements that the trial court earlier ruled admissible after conducting a section 115-10 hearing can be a basis for the court to reconsider its ruling that the child victim's hearsay statements should be admitted under that statute.

¶ 67 The *only* observation by a court of review that could even be deemed remotely supportive of such a claim is what the supreme court wrote in *Cookson* about that "defendant['s] never formally request[ing] at trial that the court revisit its pretrial ruling" admitting the victim's section 115-10 statements because of inconsistencies with her trial testimony. *Cookson*, 215 Ill. 2d at 208. However, that observation by the supreme court was merely a description of what had happened in the case before it; that observation hardly amounted to an endorsement that if the defendant had made such a request at the trial level, then the trial court would have granted that request or would even necessarily have needed to consider it. After all, in that very case, the supreme court also wrote that while questions about the reliability of the child victim's statements may have arisen at trial, the record available at the time of the pretrial section 115-10 hearing supported the trial court's decision to admit the victim's hearsay statements. *Cookson*, 215 Ill. 2d at 205. That observation appears to be a recognition by the supreme court that, as I earlier noted, the victim's testimony at trial is not an appropriate vehicle with which to second guess or undercut the trial court's ruling after conducting a section 115-10 hearing that the hearsay statements at issue should be admissible.

¶ 68                    V. THE TRIAL COURT'S REASONING WAS CORRECT

¶ 69            I conclude that had defendant objected, the trial court would have rightly overruled

defendant's objection because K.A.'s new statements would not have had an impact upon the

court's previous ruling that "the time, content, and circumstances of [K.A.'s section 115-10]

statement[s] provide sufficient safeguards of reliability."  See 725 ILCS 5/115-10(b)(1) (West

Supp. 2009).  At the third-stage hearing, the court clearly stated that, even with the new evidence,

it would not have granted a request, had one been made, for a new section 115-10 hearing.  The

trial court's reasoning was correct.  Accordingly, trial counsel was not ineffective because any

objection to the admissibility of K.A.'s section 115-10 statements or a request for another hearing

regarding those statements' admissibility would have been without merit.